Gibson, J.
The appeal concerns the right of a retail dealer to recover loss of profits and incidental damages upon the buyer’s repudiation of a contract governed by the Uniform Commercial Code. This is, indeed, the correct measure of damage in an appropriate case and to this extent the code (§ 2-708, subsection [2]) effected a substantial change from prior law, whereby damages were ordinarily limited to “ the difference *396 between the contract price and the market or current price [1]Upon the record before us, the courts below erred in declining to give effect to the new statute and so the order appealed from must be reversed.
The plaintiffs contracted to purchase from defendant a new boat of a specified model for the price of $12,587.40, against which they made a deposit of $40. They shortly increased the deposit to $4,250 in consideration of the defendant dealer’s agreement to arrange with the manufacturer for immediate delivery bn the basis of “ a firm sale ”, instead of the delivery within approximately four to six weeks originally specified. Some six days after the date of the contract plaintiffs’ lawyer sent to defendant a letter rescinding the sales contract for the reason that plaintiff Neri was about to undergo hospitalization and surgery, in consequence of which, according to the letter, it would be “ impossible for Mr. Neri to make any payments ”. The boat had already been ordered from the manufacturer and was delivered to defendant at or before the time the attorney’s letter was received. Defendant declined to refund plaintiffs’ deposit and this action to recover it was commenced.. Defendant counterclaimed, alleging plaintiffs’ breach of the contract and defendant’s resultant damage in the amount of $4,250, for which sum defendant demanded judgment. Upon motion, defendant had summary judgment on the issue of liability tendered by its counterclaim; and Special Term directed an assessment of damages, upon which it would be determined whether plaintiffs were entitled to.the return of any portion of their down payment.
Upon the trial so directed, it was shown that the boat ordered and received by defendant in accordance with plaintiffs’ contract of purchase was sold some four months later to another buyer for the same price as that negotiated with plaintiffs. From this proof the plaintiffs argue that defendant’s loss on its contract was recouped, while defendant argues that but for plaintiffs’ default, it would have sold two boats and have earned two profits instead of one. Defendant proved, without contradiction, that its profit on the sale under the contract in suit would *397 have been $2,579 and that during the period the boat remained unsold incidental expenses aggregating $674 for storage, upkeep, finance charges and insurance were incurred. Additionally, defendant proved and sought to recover attorneys’ fees of $1,250.
The trial court found “ untenable ” defendant’s claim for loss of profit, inasmuch as the boat was later sold for the same price that plaintiffs had contracted to pay; found, too, that defendant had failed to prove any incidental damages; further found “that the terms of section 2-718, subsection 2(b), of the Uniform Commercial Code are applicable and same make adequate and fair provision to place the sellers in as good a position as performance would have done ’ ’ and, in accordance with paragraph (b) of subsection (2) thus relied upon, awarded defendant $500 upon its counterclaim and directed that plaintiffs recover the balance of their deposit, amounting to $3,750. The ensuing judgment was affirmed, without opinion, at the Appellate Division and defendant’s appeal to this court was-taken by our leave.
The issue is governed in the first instance by section 2-718 of the Uniform Commercial Code which provides, among other things, that the buyer, despite his breach, may have restitution of the amount by which his payment exceeds: (a) reasonable liquidated damages stipulated by the contract or (b) absent such stipulation, 20% of the value of the buyer’s total performance or $500, whichever is smaller (§ 2-718, subsection [2], pars, [a], [b]). As above noted, the trial court awarded defendant an offset in the amount.of $500 under paragraph (b) and directed restitution to plaintiffs of the balance. Section 2-718, however, establishes, in paragraph (a) of subsection (3), an alternative right of offset in favor of the seller, as follows: “ (3) The buyer’s right to restitution under subsection (2) is subject to offset to the extent that the seller establishes (a) a right to recover damages under the provisions of this Article other than subsection (1) ”.
Among ‘ ‘ the provisions of this Article other than subsection (1) ” are those to be found in section 2-708, which the courts below did not apply. Subsection (1) of that section provides that ‘ ‘ the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price *398 at the time and place for tender and the unpaid contract price together with any incidental damages provided in this Article (Section 2-710), but less expenses saved in consequence of the buyer’s breach.” However, this provision is made expressly subject to subsection (2), providing: “ (2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article (Section 2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.”
The provision of the code upon which the decision at Trial Term rested (§ 2-718, subsection [2], par. [b]) does not differ greatly from the corresponding provisions of the prior statute (Personal Property Law, § 145-a, subd. 1, par. [b]) except as the new act includes the alternative remedy of a lump sum award of $500. Neither does the present reference (in § 2-718, subsection [3], par. [a]) to the recovery of damages pursuant to other provisions of the article differ from a like reference in the prior statute (Personal Property Law, § 145-a, subd. 2, par. [a]) to an alternative measure of damages under section 145 of that act; but section 145 made no provision for recovery of lost profits as does section 2-708 (subsection [2]) of the code. The new statute is thus innovative and significant and its analysis is necessary to the determination of the issues here presented.
Prior to the code, the New York cases “ applied the ‘ profit ’ test, contract price less cost of manufacture, only in cases where the seller [was] a manufacturer or an agent for a manufacturer ” (1955 Beport of N. Y. Law Bev. Comm., vol. 1, p. 693). Its extension to retail sales was ‘ ‘ designed to eliminate the unfair and economically wasteful results arising under the older law when fixed price articles were involved. This section permits the recovery of lost profits in all appropriate cases, which would include all standard priced goods.” (Official Comment 2, McKinney’s Cons. Laws of N. Y., Book 62%, Part 1, p. 605, under Uniform Commercial Code, § 2-708.) Additionally, and “ [i]n all cases the seller may recover incidental damages” (id., Comment 3). The buyer’s right to restitution was estab *399 fished at Special Term upon the motion for summary judgment, as was the seller’s right to proper offsets, in each case pursuant to section 2-718; and, as the parties concede, the only question before us, following the assessment of damages at Special Term, is that as to the proper measure of damage to be applied. The conclusion is clear from the record — indeed with mathematical certainty — that “ the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done ’ ’ (Uniform Commercial Code, § 2-708, subsection [2]) and hence — again under subsection (2)—that the seller is entitled to its “profit (including reasonable overhead) * * * together with any incidental damages * * *, due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.”
It is evident, first, that this retail seller is entitled to its profit and, second, that the last sentence of subsection (2), as hereinbefore quoted, referring to “ due credit for payments or proceeds of resale ” is inapplicable to this retail sales contract.[2] Closely parallel to the factual situation now before us is that hypothesized by Dean Hawkland as illustrative of the operation of the rules: ‘ ‘ Thus, if a private party agrees to sell his automobile to a buyer for $2,000, a breach by the buyer would cause the seller no loss (except incidental damages, i.e., expense of a new sale) if the seller was able to sell the automobile to another buyer for $2000. But the situation is different with *400 dealers having an unlimited supply of standard-priced goods. Thus, if an automobile dealer agrees to sell a car to a buyer at the standard price of $2000, a breach by the buyer injures the dealer, even though he is able to sell the automobile to another for $2000. If the dealer has an inexhaustible supply of cars, the resale to replace the breaching buyer costs the dealer a sale, because, had the breaching buyer performed, the dealer would have made two sales instead of one. The buyer’s breach, in such a case, depletes the dealer’s sales to the extent of one, and the measure of damages should be the dealer’s profit on one sale. Section 2-708 recognizes this, and it rejects the rule developed under the Uniform Sales Act by many courts that the profit cannot be recovered in this case.” (Hawkland, Sales and Bulk Sales [1958 ed.], pp. 153-154; and see Comment, 31 Fordham L. Bev. 749, 755-756.)
The record which in this case establishes defendant’s entitlement to damages in the amount of its prospective profit, at the samé time confirms defendant’s cognate right to “ any incidental damages provided in this Article (Section 2-710) ”[3] (Uniform Commercial Code, § 2-708, subsection [2]). From the language employed it is too clear to require discussion that the seller’s right to recover loss of profits is not exclusive and that he may recoup his “incidental” expenses as well (Procter & Gamble Distr. Co. v. Lawrence Amer. Field Warehousing Corp., 16 N Y 2d 344, 354). Although the trial court’s denial of incidental damages in the uncontroverted amount of $674 was made in the context of its erroneous conclusion that paragraph (b) of subsection (2) of section 2-718 was applicable and was “adequate * .. * * to place the sellers in as good a position as performance would have done ”, the denial seems not to have rested entirely on the court’s mistaken application of the law, as there was an explicit finding “ that defendant completely failed to show that it suffered any incidental damages.” We find no basis for the court’s conclusion with respect to ¿ deficiency of proof inasmuch as the proper items of the $674 *401 expenses (being for storage, upkeep, finance charges and insurance for the period between the date performance was due and the time of the resale) were proven without objection and were in no way controverted, impeached or otherwise challenged, at the trial or on appeal. Thus the court’s finding of a failure of proof cannot be supported upon the record and, therefore, and contrary to plaintiffs’ contention, the affirmance at the Appellate Division was ineffective to save it.
The trial court correctly denied defendant’s claim for recovery of attorney’s fees incurred by it in this action. Attorney’s fees incurred in an action such as this are not in the nature of the protective expenses contemplated by the statute (Uniform Commercial Code, § 1-106, subd. [1]; § 2-710; § 2-708, subsection [2]) and by our reference to “legal expense” in Procter & Gamble Distr. Co. v. Lawrence Amer. Field Warehousing Corp. (16 N Y 2d 344, 354-355, supra), upon which defendant’s reliance is in this respect misplaced.
It follows that plaintiffs are entitled to restitution of the sum of $4,250 paid by them on account of the contract price less an offset to defendant in the amount of $3,253 on account of its lost profit of $2,579 and its incidental damages of $674.
The order of the Appellate Division should be modified, with costs in all courts, in accordance with this opinion, and, as so modified, affirmed.
Chief Judge Fuld and Judges Burke,' Scileppi, Bergan, Breitel and Jasen concur.
Ordered accordingly.

. Personal Property Law, § 145, repealed by Uniform Commercial Code, § 10-102 (L. 1962, ch. 553, eff. Sept. 27, 1964).; Lenobel, Inc. v. Senif, 252 App. Div. 533.

. The concluding clause, “due credit for payments or proceeds of resale ”, is intended to refer to “the privilege of the seller to realize junk value when it is manifestly useless to complete the operation of manufacture ” (Supp. No. 1 to the 1952 Official Draft of Text and Comments of the Uniform Commercial Code, as Amended by the Action of the American Law Institute of the National Conference of Commissioners on Uniform Laws [1954], p. 14). The commentators who have considered the language have uniformly concluded that “the reference is to a resale as scrap under * * * Section 2-704” (1956 Report of N. Y. Law Rev. Comm., p. 397; 1955 Report of N. Y. Law Rev. Comm., vol. 1, p. 761; New York Annotations, McKinney’s Cons. Laws of N. Y., Book 62%, Part 1, p. 606, under Uniform Commercial Code, § 2-708; 1 Willier and Hart, Bender’s Uniform Commercial Code Service, § 2-708, pp. 1-180 —1-181). Another writer, reaching the same conclusion, after detailing the history of the clause, says that “ ‘ proceeds of resale ’ previously meant the resale value of the goods in finished form; now it means the resale value of the components on hand at the time plaintiff learns of breach ” (Harris, Seller’s Damages, 18 Stanf. L. Rev. 66, 104).

. “Incidental damages to an aggrieved seller include any commercially Reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer’s breach, in connection with return or resale of the goods or otherwise, resulting from the breach ” (Uniform Commercial Code, § 2-710).