**ASSOCIATED METALS & MINERALS CORPORATION, Plaintiff,**

v.

**SHARON STEEL CORPORATION, Defendant.**

**No. 82 CIV. 5262 (CBM).**

United States District Court, S.D. New York.

March 31, 1983.

Paskus, Gordon & Hyman by Philip H. Schaeffer, New York City, for plaintiff.

Shearman & Sterling by W. Foster Wollen, Robert J. Hausen, New York City, for defendant.

## OPINION

MOTLEY, Chief Judge.

This is an action for damages arising from a breach of contract. Plaintiff Associated Metals and Minerals Corporation (Associated) is a New York corporation. Defendant Sharon Steel Corporation (Sharon) is incorporated in the state of Pennsylvania. This court has jurisdiction of the subject matter pursuant to 28 U.S.C. § 1332. The personal jurisdiction of this court over Sharon is not contested.

This case is now before the court on cross-motions for summary judgment. Sharon moves for partial summary judgment to the extent that Associated's damage claim is for interest on late contractual payments at a rate in excess of six per cent per annum. Associated cross-moves for summary judgment to the full extent of its claimed damages, or in the alternative for a partial award of damages at the rate of six percent, subject to a greater damage award after trial of the action. For the reasons stated below, Sharon's motion is granted, and Associated's motion is granted in part.

The material facts underlying this action are undisputed. The case involves two contracts for the purchase and sale of steel slabs. On or about March 30, 1981, the parties entered into an agreement for the sale by Associated to Sharon of steel slabs of a net weight of 15,000 metric tons. A second agreement was entered into on or about July 7, 1981, for the same quantity of steel, on the same terms. The two agreements were memorialized in purchase orders.[1]

The steel slabs purchased to the two contracts were to be delivered to Sharon in separate shipments, with payment by Sharon required within fifteen days of receipt of each shipment. The contracts contained no provision for interest on late payments. The combined purchase price of the 30,000 metric tons of steel slabs under the two contracts was approximately $7,380,000.00.

All of the steel was delivered and accepted. Sharon made many of its payments more than fifteen days after it had received the shipments of steel slabs. The total purchase price was, however, eventually paid by Sharon.

In addition, Associated contends that it had contracted to acquire the steel slabs for sale to Sharon from a Norweigan producer. According to Associated, it financed these acquisitions with an irrevocable letter of credit drawn in Norway. Associated claims that Sharon was aware of these arrangements. This Sharon denies.

Associated brought suit in this court after the completion of all shipments under the contracts, and after Sharon had paid the contractual purchase price, seeking damages in the form of interest on Sharon's late payments. Associated claims to have been damaged by Sharon's failure to timely meet its contractual obligations in that Associated incurred additional financing charges. Associated seeks to recover $103,955.78, representing interest on the late payments at prime rates ranging from 15.75% to 20.50%.[2]

---

1. *See* Exhibits A and B to Affidavit of T.W. Evans in Support of Sharon Steel Corporation's Motion for Partial Summary Judgment (Evans Affidavit).

2. Associated's interest calculations are appended to the Complaint as Exhibits A and B.

*Discussion*

## I. *Choice of Law:*

 State law governs the substantive aspects of actions in diversity in the federal courts. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, *reh'g denied,* 305 U.S. 673, 59 S.Ct. 229, 83 L.Ed. 436 (1938). To determine which state's law is to be applied, the federal court must look to the choice of law rule of its forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This court must therefore look to the choice of law rules of the state of New York to determine the governing state law in this action.

 New York courts will honor a choice of law provision in a sales contract as long as the transaction bears a "reasonable relationship" to the state whose law is chosen. N.Y.U.C.C. § 1–105(1) (McKinney Supp.1982–1983). *See also Fleischmann Distilling Corp. v. Distillers Co. Ltd.,* 395 F.Supp. 221, 229 (S.D.N.Y.1975). Here, both purchase orders contain a choice of law provision stating that they are to be governed by Pennsylvania law.[3] The purchase orders indicate that the steel slabs were to be delivered FOB in Pennsylvania.[4] It is also undisputed that the material was to be used by Sharon at its Farrell, Pennsylvania facility.[5] The court concludes that the transaction bears a reasonable relationship to Pennsylvania. Hence, it is to Pennsylvania law that the court must turn in considering the instant motions.

## II. *The Uniform Commercial Code*

Since the contracts at issue are for the purchase and sale of goods, the court turns first to Article 2 of the Uniform Code as enacted in Pennsylvania.

### A. *Sellers' Incidental Damages*

Associated contends that, as an aggrieved seller, it may recover the interest it seeks as incidental damages pursuant to section 2–710 of the Uniform Commercial Code (UCC), 13 Pa.Cons.Stat.Ann. § 2710 (Purdon Supp.1982).

 Section 2710 [6] provides that:

Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the breach by the buyer, in connection with return or resale of the goods *or otherwise resulting from the breach.*

(emphasis added). Associated's contention is that the statutory language "or otherwise resulting from the breach" encompasses an action for interest as incidental damages under the UCC, and that such an action may be brought directly under section 2710. The court does not agree.

The UCC provides for the recovery of incidental damages in connection with an action for the price,[7] in connection with an action for damages flowing from the buyer's nonacceptance of the goods or repudiation of the contract,[8] or in connection with a resale of the goods resulting from the buyer's breach.[9] Section 2710 merely defines the scope of the "incidental damages" recoverable in the above-cited types of sellers' actions. The UCC, however, makes no provision for an action for incidental damages pursuant solely to section 2710.

---

**3.** *See* ¶ 17 of Exhibit A, and ¶ 17 of Exhibit B to Evans Affidavit.

**4.** *See* Exhibits A and B to Evans Affidavit.

**5.** *See* Evans Affidavit at ¶ 4.

**6.** References to the UCC as enacted in Pennsylvania will be numbered in the style in which they appear in Pa.Cons.Stat.Ann., *e.g.* "§ 2710."

References to other compilations of the UCC will be in the customary style, *e.g.* "§ 2–710."

**7.** 13 Pa.Cons.Stat.Ann. § 2709(a) (Purdon Supp. 1982).

**8.** *Id.* at § 2708(a).

**9.** *Id.* at § 2706(a).

In the instant case, Associated has already been paid the price due under the express terms of the contracts. There was neither refusal of the goods nor repudiation of the contract by Sharon. There was no occasion for resale of the goods. Sharon's breach consisted solely of the failure to make payments under the contracts as they came due. Associated's claim is for damages incurred as a result of that breach. This court holds that incidental damages are not available to a seller under UCC section 2710 for *any* breach, but only for the type of breach for which the seller is given a specific right of action in Article 2.

The cases cited by Associated in support of its position, while indicating that interest may be included in incidental damages in an appropriate case, do not hold that actions for incidental damages may be brought directly under section 2710.

In *Intermeat, Inc. v. American Poultry, Inc.*, 575 F.2d 1017 (2d Cir.1978), the court held that the seller could recover financing charges incurred as a result of the buyer's wrongful rejection of goods in an action under N.Y.U.C.C. § 2–706(1). The court cited *Neri v. Retail Marine Corp.*, 30 N.Y.2d 393, 334 N.Y.S.2d 165, 285 N.E.2d 311 (1972), "where the Court of Appeals applied as the proper measure of damages to the seller his loss of profit under § 2–708, [and] allowed finance charges as part of the 'incidental damages' provided for in § 2–710." 575 F.2d at 1024. The Second Circuit noted with approval the *Neri* court's reasoning "that the purpose of the Commercial Code was 'to put the seller in as good a position as performance would have done,' § 2–708(2)," and noted that the Court of Appeals "apparently gave a broad meaning to 'reasonable charges, expenses or commissions incurred', reimbursement of which was necessary to make the plaintiff whole." *Id.*

This court reads *Intermeat* to stand for the proposition that, where a right of action for incidental damages is granted by the UCC, the scope of such incidental damages is quite broad. The case does not,

however, establish a right to bring an action for incidental damages directly pursuant to section 2–710.

Neither does the district court's holding in *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son*, 467 F.Supp. 830, (E.D.Mich.1979), *rev'd on other grounds,* 668 F.2d 905 (6th Cir.1982), persuade this court that an action for incidental damages lies in the instant case. There, the district court awarded incidental damages including interest expenses incurred as the result of defendant's failure to pay balances due on open accounts. The plaintiff had, however, sued for the price under UCC section 2–709. *Id.* at 835. The award of interest as incidental damages was not, therefore, one solely under UCC section 2–710, but was made in connection with an action for the price under UCC section 2–709. *See id.* at 840. *See also Hofmann v. Stoller*, N.D., 320 N.W.2d 786, 792–93 (1982) (interest awarded as incidental damages in action under UCC section 2–709 for price); and *Berg v. Hogan*, 34 U.C.C.Rep.Serv. 505, 511, N.D., 322 N.W.2d 448, 453–54 (1982).

This court has found no authority indicating that UCC section 2710, standing alone, may form the basis of an action for damages. Associated's contention that it may recover the interest charges that it allegedly incurred as incidental damages must therefore be rejected.

### B. *Sellers' Consequential Damages:*

■ Associated, alternatively, contends that it may recover its interest costs as consequential damages under the UCC, even if they may not be recovered as incidental damages under UCC section 2710. It is, however, well settled that the UCC does not provide the remedy of consequential damages for aggrieved sellers. *See, e.g., Petroleo Brasileiro, S.A., Petrobras v. Ameropan Oil Corp.*, 372 F.Supp. 503, 508 (E.D.N.Y.1974); *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son*, 467 F.Supp. 830, 840 (E.D.Mich.1979), *rev'd on other grounds,* 668 F.2d 905 (6th Cir.1982); *S.C. Gray, Inc. v. Ford Motor Co.*, 92 Mich.App. 789, 286 N.W.2d 34, 44 (1979). *Cf. Ebasco Services,*

*Inc. v. Pennsylvania Power & Light Co.*, 460 F.Supp. 163, 213 n. 62 (E.D.Pa.1978) (cost of replacement power recoverable as consequential damages by buyer under UCC §§ 2–712(2) and 2–714(2) from supplier of turbines); and *R.I. Lampus Co. v. Neville Cement Products Corp.*, 474 Pa. 199, 203–07, 378 A.2d 288, 290–91 (1977) ("reasonably foreseeable" test for buyer's consequential damages under UCC sections 2714 and 2715).

Associated may not, therefore, recover its interest costs as consequential damages under the UCC.

### III. *Pennsylvania Common Law*

Unless displaced by the particular provisions of [the UCC], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

13 Pa.Cons.Stat.Ann. § 1103 (Purdon Supp. 1982).

This court may, therefore, look to the common law of Pennsylvania in evaluating Associated's claim for interest at the rates at which it was allegedly incurred as the result of Sharon's breach of the payment provisions of the contracts.

■ This court has concluded that, under Pennsylvania law, Associated is entitled to recover simple interest at the rate of six percent per annum, calculated from the date that each payment was due to the date that it was actually received, as damages for Sharon's wrongful failure to pay the sums admittedly owing on the contracts when due.

In *Formigli Corp. v. Fox*, 348 F.Supp. 629 (E.D.Pa.1972), an action for sums due on a contract but wrongfully withheld by defendant, the plaintiff sought interest as damages at what it contended had been the prime rate during the relevant period. The court rejected the plaintiff's argument, holding that "[w]hen money is due a person under a contract but is improperly withheld or unpaid by the defendant, the party to whom such money is due is entitled to interest from the time it was due, at 6% per annum." *Id.* at 648. The court also rejected plaintiff's argument that *In re Kenin's Trust Estate*, 343 Pa. 549, 23 A.2d 837 (1942), authorized an award at the higher rate.

[*Kenin's Estate*] merely stands for the proposition that a court will not award interest at the legal rate of 6% when the prevailing rates are less. This is to avoid a windfall recovery by the prevailing party. In our search we have found no Pennsylvania case where recovery was permitted for interest at a higher rate than 6%. *Although it may be fair and equitable to do so, this does not appear to be the law of Pennsylvania to which we are bound.*

*Id.* at n. 1 (emphasis added). "In the absence of express contract simple interest at the statutory legal rate is recoverable as damages for breach of contract." *Id.* (citation omitted).[10]

In *Peterson v. Crown Financial Corp.*, 661 F.2d 287 (3d Cir.1981), the court distinguished between claims for interest in equitable actions for restitution and such claims in actions for breach of contract. In the former case, the court held, an award of interest as damages is not limited to the statutory prejudgment interest rate.[11] "Under our reading of the relevant Pennsylvania precedents, the trial judge does have discretion in such cases to award damages in the nature of prejudgment interest

---

10. The court's reference was to Pennsylvania's "legal rate of interest". *See* 41 Pa.Stat.Ann. § 202 (Purdon Supp.1982–1983).

11. The court noted that "prejudgment 'interest' *as such* in Pennsylvania is conceptually distinguishable from detention damages *in the nature* of interest. For simplicity's sake [however, the court used] the term 'prejudgment interest' throughout [its] opinion to refer generically to both types of awards...." 661 F.2d at 293 n. 8. The "legal rate of interest" also appears to be that at which prejudgment interest awards are calculated in Pennsylvania.

in an amount greater than [the] six percent [legal prejudgment interest rate]." *Id.* at 293.

In the latter case, however, where the defendant has breached a promise to pay a definite sum of money, "the plaintiff is entitled to interest at the six percent legal rate as a matter of law." *Id.* (citations omitted).

This court agrees with the Third Circuit's observation "that it is difficult to draw a logical distinction between [the case of] a wrongful demand and acceptance of a sum paid under protest ... and the refusal to pay funds due under a contract. It may be inequitable to require debtors to pay only six percent under present Pennsylvania law yet force creditors who have made wrongful demands to disgorge at money-market rates." *Id.* at 297–98. As to Associated's claim for contractual damages, however, "Pennsylvania has provided clear—if questionable—precedent to which a federal court sitting in diversity is bound." *Id.* at 298.

This court therefore finds that, under Pennsylvania law, Associated is entitled to recover interest on the late payment but only at the statutory "legal rate" of six per cent simple interest per annum.[12]

Associated has argued valiantly for a different result, noting that the cases relied upon by the *Peterson* court in its discussion of interest in contract actions applied section 337(a) of the Restatement (First) of Contracts. (*See Peterson*, 661 F.2d at 294–95, and cases cited therein.) Associated urges this court instead to apply section 347 of the Restatement (Second) of Contracts. That section states, in pertinent part, that "the injured party has a right to damages based on his expectation interest as measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or con-

sequential loss, caused by the breach...." Restatement (Second) of Contracts, § 347 (1981 ed.). Comment "a." to the section indicates that its purpose is to "put [the injured party] in as good a position as he would have been in had the contract been performed."

█ This court need not reach the issue of whether, under the Restatement (Second), Associated would be entitled to recover interest at the rates at which it was allegedly incurred. The court has found no indication that section 347 of the Restatement (Second) has been adopted by the courts of Pennsylvania. Rather, the law of Pennsylvania is clearly that a plaintiff that has been damaged by a defendant's failure to pay a specified sum of money at the time it is due is entitled only to interest at the statutory legal rate, in the absence of a contractual provision to the contrary. Sitting in diversity, this court is not "free to exercise an independent judgment as to what the common law of the State is—or should be...." *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 71, 58 S.Ct. 817, 819, 82 L.Ed. 1188, *reh'g denied*, 305 U.S. 673, 59 S.Ct. 229, 83 L.Ed. 436 (1938). It is to the law of Pennsylvania as articulated by the courts of that state that this court is bound.

## IV. *Course of Dealing:*

The final question that this court must consider is Sharon's contention that a material issue of fact precludes summary judgment for plaintiff on its claim for damages. Sharon seeks to show that a course of dealing pursuant to previous contractual relations between the parties established that Sharon would not be liable for interest if it failed to pay its contractual obligations on time, in other words, that the fifteen-day payment provisions in the contracts here at issue are meaningless. The court finds that Sharon's course of dealing argu-

12. *See also Sun Shipbuilding & Drydock Co. v. United States Lines, Inc.,* 439 F.Supp. 671, 675 (E.D.Pa.1977) ("If a claim is liquidated, the party whose payment or money has been withheld is entitled to prejudgment interest as a matter of right from the time the money became due or payable."), *aff'd,* 582 F.2d 1276 (3d Cir.1978), *cert. denied,* 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979).

**24**

ment does not preclude summary judgment in this case for the following reasons:

UCC § 2202 provides that terms of a writing "intended by the parties as a final expression of their agreement ... may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented ... (1) by course of dealing ... (section 1205)...." 13 Pa.Cons.Stat.Ann. (Purdon Supp.1982).

The term "course of dealing" is defined as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." 13 Pa.Cons.Stat.Ann. § 1205(a) (Purdon Supp.1982). The statute further provides that "[t]he express terms of an agreement and an applicable course of dealing ... shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control ... course of dealing...." 13 Pa.Cons.Stat.Ann. § 1205(d) (Purdon Supp.1982).

■ Here, Sharon seeks to show that late payments were made under previous contracts, and that Associated did not object to those late payments, and made no demand for interest on them. Sharon argues that a course of dealing was established to the effect that no interest would be charged by Associated on late payments, and that, interpreting the instant contracts in light of this alleged course of dealing, Associated may not recover such interest here. Section 1205(d), however, provides that when construction of the express terms of the contract with course of dealing is "unreasonable," the express terms control course of dealing.

The express terms of the contracts here in issue provide that Sharon was to make payments within fifteen days of receipt of the steel slab shipments. A construction of these terms along with an alleged course of

dealing which, if proven, would show that Associated would not be entitled to interest for delayed payment of the sums due would, unquestionably, be unreasonable. Such a construction would render the express terms of the contracts meaningless. That this court refuses to do. The express terms of the contract, which provide for payment by Sharon within fifteen days of receipt of each shipment, are controlling here. There is, therefore, no genuine issue of material fact with respect to a course of dealing of the sort sought to be proven by Sharon.

*Conclusion*

Defendant Sharon's motion for partial summary judgment is granted. Plaintiff Associated's cross-motion for summary judgment is granted to the extent that plaintiff moves for an award of damages in the form of interest at the rate of six per cent per annum.

The parties are in agreement that, calculated at the rate of six per cent per annum, the amount of plaintiff's claim is $35,-376.99.[13] Judgment will therefore be entered for plaintiff Associated in that amount, and this case will be discontinued.

---

**13.** *See* Defendant Sharon Steel's Statement Pursuant to Local Rule 3(g) at ¶ 13; Plaintiff Associated Metals and Minerals' Statement Pursuant to Local Rule 3(g) at ¶ 10.