OPINION OF THE COURT
Bellacosa, J.
A seller (Phoschem) breached its contract to timely deliver goods to a buyer-trader (Fertico) who properly sought cover (under the Uniform Commercial Code that means acquiring substitute goods) from another source (Unifert) in order to avoid breaching that buyer-trader’s obligation to a third-party buyer (Altawreed). The sole issue involves the applicable principles and computation of damages for breach of the Phoschem-to-Fertico contract.
We hold that under the exceptional circumstances of this case plaintiff Fertico, as a buyer-trader, is entitled to damages from seller Phoschem equal to the increased cost of cover plus consequential and incidental damages minus expenses saved (UCC 2-712 [2]). In this case, expenses saved as a result of the breach are limited to costs or expenditures which would have arisen had there been no breach. Thus, the seller Phoschem is not entitled to a credit from the profits of a subsequent sale by the first buyer-trader Fertico to a fourth party (Janssens) of nonconforming goods from Phoschem. Fertico’s letter of credit had been presented by Phoschem and honored so, under the specific facts of this case, Fertico had no commercially reasonable alternative but to retain and resell the fertilizer. This is *80 so despite Fertico’s exercise of cover in connection with the first set of transactions, i.e., Phoschem to Fertico to Altawreed. The covering buyer-trader may not, however, as in this case, recover other consequential damages when the third party to which it made its sale provides increased compensation to offset additional costs arising as a consequence of the breach.
In October 1978 appellant Fertico Belgium S. A. (Fertico), an international trader of fertilizer, contracted with Phosphate Chemicals Export Association, Inc. (Phoschem), a corporation engaged in exporting phosphate fertilizer, to purchase two separate shipments of fertilizer for delivery to Antwerp, Belgium. The first shipment was to be 15,000 tons delivered no later than November 20, 1978 and the second was to be 20,000 tons delivered by November 30, 1978. Phoschem knew that Fertico required delivery on the specified dates so that the fertilizer could be bagged and shipped in satisfaction of a secondary contract Fertico had with Altawreed, Iraq’s agricultural ministry. Fertico secured a letter of credit in a timely manner with respect to the first shipment. After Phoschem projected a first shipment delivery date of December 4, 1978, Fertico advised Phoschem, on November 13, 1978, that the breach as to the first shipment presented "huge problems” and canceled the second shipment which had not as of that date been loaded, thus ensuring its late delivery. The first shipment did not actually arrive in Antwerp until December 17 and was not off-loaded until December 21, 1978. Despite the breach as to the first shipment, Fertico retained custody and indeed acquired title over that first shipment because, as its president testified "[w]e had no other choice” (Rec on app, at 597-598) as defendant seller Phoschem had presented Fertico’s $1.7 million letter of credit as of November 17, 1978, and the same had been honored by the issuer (see, UCC 5-114).
Fertico’s predicament from the breach by delay of even the first shipment, a breach which Phoschem does not deny, was that it, in turn, would breach its contract to sell to Altawreed unless it acquired substitute goods. In an effort to avoid that secondary breach, Fertico took steps in mid-November to cover (UCC 2-712) the goods by purchasing 35,000 tons of the same type fertilizer from Unifert, a Lebanese concern. The cost of the fertilizer itself under the Phoschem-to-Fertico contract was $4,025,000, and under the Unifert-to-Fertico contract $4,725,000, a differential of $700,000. On the same day Fertico acquired cover, November 15, 1978, Fertico’s president trav *81 eled to Baghdad, Iraq, to renegotiate its contract with Altawreed. In return for a postponed delivery date and an additional payment of $20.50 per ton, Fertico agreed to make direct inland delivery rather than delivery to the seaport of Basra. Fertico fulfilled its renegotiated Altawreed contract with the substitute fertilizer purchased as cover from Unifert.
In addition to the problems related to its Altawreed contract, Fertico was left with 15,000 tons of late-delivered fertilizer which it did not require but which it had been compelled to take because Phoschem had received payment on Fertico’s letter of credit. This aggrieved international buyer-seller was required to store the product and seek out a new purchaser. Fertico sold the 15,000 tons of the belatedly delivered Phoschem fertilizer to another buyer, Janssens, on March 19, 1979, some three months after the nonconforming delivery, and earned a profit of $454,000 based on the cost to it from Phoschem and its sale price to Janssens.
In 1981 Fertico commenced this action against Phoschem seeking $1.25 million in damages for Phoschem’s breach of the October 1978 agreement. A jury returned a verdict of $1.07 million which the trial court refused to overturn on a motion for judgment notwithstanding the verdict. The Appellate Division vacated the damage award, ordered a new trial on the damages issue only and ruled, as a matter of law, (1) that the increased transportation costs on the Altawreed contract were not consequential damages; (2) that the higher purchase price paid by Altawreed to Fertico was an expense saved as a consequence of the Phoschem breach; and (3) that the Fertico damages had to be reduced by the profits from the Janssens’ sale (Fertico Belgium v Phosphate Chems. Export Assn., 120 AD2d 401). Fertico appealed to this court on a stipulation for judgment absolute. We disagree with propositions (2) and (3) in the Appellate Division ruling, and conclude that the Uniform Commercial Code and our analysis support a modification and reinstatement of $700,000 of the damage award in a final judgment resolving this litigation between the parties.
Failure by Phoschem to make delivery on the contract dates concededly constituted a breach of the contract (White and Summers, Uniform Commercial Code § 6-2, at 207 [2d ed]). The Uniform Commercial Code § 2-711 gives the nonbreaching party the alternative of either seeking the partial self-help of cover along with recovery of damages (UCC 2-712), or of recovering damages only for the differential between the *82 market price and the contract price, together with incidental and consequential damages less expenses saved (UCC 2-713; see also, Productora e Importadora de Papel, S.A. de C.V. v Fleming, 376 Mass 826, 383 NE2d 1129). Fertico exercised its right as the wronged buyer-trader to cover in order to obtain the substitute fertilizer it required to meet its obligation ünder its Altawreed contract (see, UCC 2-712, comment 1).
A covering buyer’s damages are equal to the difference between the presumably higher cost of cover and the contract price, plus incidental or consequential damages suffered on account of the breach, less expenses saved (UCC 2-712 [2]). Fertico is thus entitled to a damage remedy under this section because its cover purchase was made in good faith, without unreasonable delay, and the Unifert fertilizer was a reasonable substitute for the Phoschem fertilizer (UCC 2-172 [1]; Reynolds Sec. v Underwriters Bank & Trust Co., 44 NY2d 568, 572-573).
Fertico’s additional costs for delivering the fertilizer inland rather than at a seaport would usually constitute consequential damages because they resulted from Phoschem’s breach, because Phoschem knew that Fertico would incur damages under its separate contract obligation and because the damages were not prevented by the cover (UCC 2-715 [2]). The increased costs attendant to the Altawreed contract are consequential damages because they did not "arise within the scope of the immediate [Phoschem-Fertico] transaction, but rather stem from losses incurred by [Fertico] in its dealings [with Altawreed] which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting” (Petroleo Brasileiro, S.A. Petrobras v Ameropan Oil Corp., 372 F Supp 503, 508). Ordinarily, an award for consequential damages occasioned by the seller’s breach would be necessary to put a buyer like Fertico in as good a position as it would have been had there been no breach (UCC 1-106; see, Neri v Retail Mar. Corp., 30 NY2d 393; 3 Hawkland, Uniform Commercial Code Series § 2-715:01, at 389). Inasmuch as Altawreed compensated Fertico for the additional delivery costs, Fertico was insulated from any loss in that respect as a result of Phoschem’s breach, thereby eliminating this category of potential damages. On this question of consequential damages, the Appellate Division was correct.
The additional compensation to Fertico, an international *83 trader, from Altawreed is not, however, an expense saved as a consequence of the seller Phoschem’s breach for which Phoschem is entitled to any credit (UCC 2-712 [2]). In most instances, and particularly in this case, saved expenses must be costs or expenditures. which would be anticipated had there been no breach (see, Productora e Importadora de Papel, S.A. de C.V. v Fleming, 376 Mass 826, 839, 383 NE2d 1129, 1137, supra). For example, if a seller were to breach a contract to deliver an unpackaged product to the buyer and the buyer were to cover with the same product prepackaged, the cost of packaging which the buyer would have had to perform is an expense saved as a consequence of the breach (see, 3 Hawk-land, Uniform Commercial Code Series § 2-712:02, at 362). The increased remuneration from Altawreed was compensation for the additional shipment responsibilities incurred by Fertico, not a cost or expenditure anticipated in the absence of a breach, and therefore was erroneously analyzed and credited in Phoschem’s favor by the Appellate Division.
The third prong of the damages analysis relates to the profit made from the independent sale of the Phoschem fertilizer to Janssens. The Appellate Division erred in offsetting this profit against the damages otherwise suffered since that court mistakenly concluded that the sale stemmed from and was dependent upon Phoschem’s breach. This offset, on these peculiar facts, would severely disadvantage Fertico, a trader in fertilizer who both buys and sells, and who would have pursued such commercial transactions had there been no breach by Phoschem. It would be anomalous to conclude that had it not been for Phoschem’s breach Fertico would not have continued its trade and upon such reasoning to counterpoise the profits from the Janssens’ sale against the damages arising from Phoschem’s breach. Inasmuch as the facts here are exceptional because Fertico met its subsale obligations with the cover fertilizer and yet acquired title and control over the late-delivered fertilizer from Phoschem, our decision does not fit squarely within the available Uniform Commercial Code remedies urged by the dissent. Thus, strict reliance on Neri v Retail Mar. Corp. (30 NY2d 393, supra) and on Hawkland’s commentary (3 Hawkland, Uniform Commercial Code Series § 2-714:05, at 384), as undertaken by the dissent, does not provide an adequate resolution to the particular problem presented in this case.
Fertico learned of Phoschem’s breach after Phoschem had negotiated Fertico’s $1.7 million letter of credit, which consti *84 tuted complete payment for the first shipment. With no commercially reasonable alternative, Fertico took custody of the first shipment but canceled the second (UCC 2-601 [c]), having previously notified Phoschem of its breach (UCC 2-607). The loss resulting to Fertico by having to acquire cover, even in the face of its acceptance of a late-delivered portion of the fertilizer, is properly recoverable under section 2-714 (1) (3 Hawkland, Uniform Commercial Code Series § 2-714:05, at 384-385). At the same time, Uniform Commercial Code § 1-106 directs that the remedies provided by the Uniform Commercial Code should be liberally administered so as to put the aggrieved party in as good a position as if the other party had fully performed. Had Phoschem fully performed, Fertico would have had the benefit of the Altawreed transaction and, as a trader of fertilizer, the profits from the Janssens’ sale as well. "Gains made by the injured party on other transactions after the breach are never to be deducted from the damages that are otherwise recoverable, unless such gains could not have been made, had there been no breach” (5 Corbin, Contracts § 1041, at 256; see also, Steen Indus. v Richer Communications, 226 Pa Super Ct 219, 314 A2d 319). Fertico’s profit made on the sale of a nonspecific article such as fertilizer, of which the supply in the market is not limited, should not therefore be deducted from the damages recoverable from Phoschem (5 Corbin, Contracts § 1041, at 258-260; see also, Neri v Retail Mar. Corp., 30 NY2d 393, 401, supra).
Fertico was concededly wronged by Phoschem’s breach and Fertico resorted to Uniform Commercial Code remedies which are rooted in what we perceive to be the realities of the marketplace. Fertico did what reasonable traders would do. and would like to do in mitigating risks inflicted in this case by Phoschem and in exerting its commercial resourcefulness. That is, it took steps to save its business, its customers, its good will and its deals and ultimately to also recover appropriate damages from a wrongdoer. That did not produce a "windfall” or a "double benefit” to the aggrieved party as the dissenting opinion asserts. The result we reach today countenances no such thing. On the contrary, to deprive the buyer-trader Fertico of its rightful differential damages of $700,000 and to credit this transactionally independent profit to Phoschem would perversely enrich the wrongdoer at the expense of the wronged party, a result those in the marketplace would find perplexing and a result which the generous remedial purpose of the Uniform Commercial Code does not compel or *85 authorize. The dissent’s characterization of the recovery by an injured party of damages for a breach of contract as a "benefit” is wrong, since that functionally attributes a kind of lien against the independently pursued benefit derived out of that separate transaction.
Accordingly, the order of the Appellate Division affirming liability but vacating, on the law, the damage award and remanding the matter for a new trial on the issue of damages, as appealed to this court on a stipulation for judgment absolute, should be modified and damages awarded to Fertico in the amount of $700,000 in accordance with this opinion.