1997 SD 32

**VANDERWERFF IMPLEMENT, INC., Plaintiff and Appellee,**

v.

**Blaine McCANCE, Defendant and Appellant.**

No. 19473.

Supreme Court of South Dakota.

Considered on Briefs Dec. 4, 1996.

Decided March 26, 1997.

Bruce V. Anderson, Anderson Law Office, Wagner, for plaintiff and appellee.

John J. Simpson, Winner, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1] Vanderwerff Implement, Inc. (Vanderwerff) sued Blaine McCance (McCance) for breach of a sales contract. The trial court awarded Vanderwerff a judgment for $2,962.25. McCance appeals the judgment. We affirm in part, reverse in part and remand.

**FACTS AND PROCEDURAL HISTORY**

[¶ 2] On March 31, 1992, McCance approached Kenny Lundberg (Lundberg), a sales representative for Vanderwerff, regarding the purchase of a used disc. Lundberg indicated which discs on the lot were current-

ly available. McCance expressed his intention to use the disc immediately as it was the season for planting small grain. McCance personally inspected several discs and ultimately agreed to purchase an IHC 480 disc. The disc was ten to fifteen years old, was acquired by Vanderwerff via trade, and had been reconditioned in Vanderwerff's shop. At the time of the purchase, Lundberg informed McCance the disc was "field ready." McCance then paid $2,575.00 by check for the disc and signed a retail order form.

[¶ 3] McCance personally transported the disc home and proceeded to use it on the day of purchase. There were no problems with the disc during its initial use on fifteen to twenty acres. Then the disc began leaving a six- to eight-inch ridge on one side, claimed to be caused by plugging of the disc.

[¶ 4] On March 31 or the following day, McCance telephoned Lundberg, informed him of this problem with the disc, and requested that Lundberg hold his check due to the problem encountered. Vanderwerff responded by offering to fix the disc at no charge or allow McCance to have a blacksmith fix it, with Vanderwerff paying the cost. On April 2, 1992, Vanderwerff contacted McCance's mother to inquire whether the disc was in need of repair. No definite answer was given by McCance or his mother.

[¶ 5] McCance stopped payment on his check, and Vanderwerff received the returned check on approximately April 7, 1992. McCance returned the disc on April 17. Upon receipt of the disc, Vanderwerff conducted a test and discovered the gangs were spinning properly, refuting McCance's contention that the gangs were "out of round." Vanderwerff also noted the tab (a portion of a plate of metal that was five inches high and eleven inches wide) was missing on the hold down mechanism. Such a missing tab, however, is common with these discs and does not affect their level of performance.

[¶ 6] The parties then discussed a rescission of the contract as well as rental compensation to Vanderwerff, but no agreement was reached. McCance claims he informed Vanderwerff he definitely did not want the disc at that time, but it was Vanderwerff's impression that the disc was to be fixed and McCance would finalize the sales transaction. This was not to be and Vanderwerff next commenced this litigation.

[¶ 7] After a trial to the court, it found McCance breached an enforceable agreement between the parties and the representation by Lundberg as to the disc being "field ready" was an express warranty, but it was not breached. Further, the trial court found that Vanderwerff proved the company was a lost volume seller. Damages were awarded to Vanderwerff in the amount of $2,575.00, plus interest. McCance appeals, raising the following issues:

I.     Whether the trial court's finding that there was no breach of express warranty was clearly erroneous.

II.    Whether McCance properly rejected the IHC disc pursuant to SDCL 57A-2-602.

III.   Whether damages were properly measured.

[¶ 8] Issues one and two are affirmed, as appellant's arguments on the issues are without merit. We therefore address only issue three.

## STANDARD OF REVIEW

[¶ 9] This case deals with a mixed question of law and fact. A trial court's findings of fact are reviewed under a clearly erroneous standard. *Baldwin v. National College*, 537 N.W.2d 14, 17 (S.D.1995). Conclusions of law, however, are reviewed de novo. *Grode v. Grode*, 1996 SD 15, ¶ 5, 543 N.W.2d 795, 799.

## DECISION

### Damages

[¶ 10] McCance claims the trial court erred in awarding damages in the amount of $2,962.25 to Vanderwerff. We agree.

[¶ 11] According to SDCL 57A-2-708(1), generally, a seller's measure of damages in the event of a breach is the difference

between the market and the contract prices.[1] However, it is recognized in SDCL ch 57A–2 that this formula is not in each case an appropriate method for assessing damages. Pursuant to SDCL 57A–2–708(2),[2] the seller may seek damages for lost profits on the sales contract. In order to apply subsection (2), the seller must establish its status as a "lost volume seller." *Unique Designs v. Pittard Mach.*, 200 Ga.App. 647, 409 S.E.2d 241, 243 (1991); *National Controls, Inc. v. Commodore Bus. Machs.*, 163 Cal.App.3d 688, 209 Cal.Rptr. 636, 641–42 (1985); *see generally* White & Summers, *Uniform Commercial Code* § 7–9, at 384–87 (4thed 1995). To be a "lost volume seller," one must prove that "even though [it] resold the contract goods, that sale to the third party would have been made regardless of the buyer's breach[,]" using the inventory on hand at the time. *National Controls*, 209 Cal.Rptr. at 642 (citing *Neri v. Retail Marine Corp.*, 30 N.Y.2d 393, 334 N.Y.S.2d 165, 285 N.E.2d 311, 314 (1972); *Snyder v. Herbert Greenbaum & Assoc., Inc.*, 38 Md.App. 144, 380 A.2d 618, 624–25 (Md 1977); *Teradyne, Inc. v. Teledyne Indus., Inc.*, 676 F.2d 865, 866–68 (1stCir.1982); *Nederlandse, etc. v. Grand Pre–Stressed Corp.*, 466 F.Supp. 846 (E.D.N.Y.1979)). Furthermore, "[t]he lost volume seller must establish that had the breaching buyer performed, the seller would have realized profits from two sales." *Id.* The main inquiry is whether the seller had the ability to sell the product to both the buyer who breached and the resale buyer. *Unique Designs*, 409 S.E.2d at 243 (citing *Ragen Corp. v. Kearney & Trecker Corp.*, 912 F.2d 619, 627 (3rdCir.1990)).

■ [¶ 12] The trial court found that Vanderwerff sells around fifteen new discs and fifteen used discs each year. Although there

was no specific finding by the trial court that Vanderwerff could have sold a disc to a third party in addition to McCance, there is evidence in the record supporting that conclusion. The most compelling evidence is that Vanderwerff actually resold the disc involved in this case. Furthermore, in addition to Vanderwerff selling about thirty discs every year, he typically possesses about ten or twelve in inventory.

■ [¶ 13] Having found Vanderwerff proved it was a lost volume seller, the trial court awarded damages in the amount of $2,575.00, which was the original purchase price of the disc, plus fifteen percent interest ($386.25), totaling $2,961.25. This application of SDCL 57A–2–708(2) is flawed, however. The applicable subsection of the statute refers to measuring the damages by determining the *profit* the seller would have made had the buyer fully performed.

The California Court of Appeal noted the reasoning behind its similar statute:

> "The whole concept of lost volume status is that the sale of the goods to the resale purchaser could have been made with other goods had there been no breach. In essence, the original sale and the second sale are independent events, becoming related only after breach, as the original sale goods are applied to the second sale. To require a credit for the *proceeds of resale* is to deny the essential element that entitles the lost volume seller to § 2–708(2) in the first place—the mutual independence of the contract and the resale."

*National Controls*, 209 Cal.Rptr. at 643 (quoting *Snyder*, 380 A.2d at 625) (emphasis added). Consistent with this analysis as well as the language of SDCL 57A–2–708(2), Vanderwerff would be entitled to the *profits*

---

1. SDCL 57A–2–708(1) reads:
   (1) Subject to subsection (2) and to the provisions of this chapter with respect to proof of market price (§ 57A–2–723), the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this chapter (§ 57A–2–710), but less expenses saved in consequence of the buyer's breach.

2. SDCL 57A–2–708(2) reads:

   (2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this chapter (§ 57A–2–710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

which would have been derived from the eventual sale of the disc to McCance. The trial court, however, awarded Vanderwerff the full price, including the profit, plus interest. Such an award allows Vanderwerff to receive the full sales price twice, which a clear reading of the statutes and case law does not allow.

[¶ 14] Vanderwerff relies on *Neri*, 334 N.Y.S.2d at 165, 285 N.E.2d at 311, to support the proposition that it is entitled to the original contract price plus interest. In *Neri*, six days after the date of a contract to purchase a boat, the buyer rescinded. *Id.* 334 N.Y.S.2d at 166–67, 285 N.E.2d at 312. The seller then resold the boat at the same price. Contrary to Vanderwerff's contention, the court held the "[m]easure of damages should be the dealer's *profit* on one sale." *Id.* 334 N.Y.S.2d at 170, 285 N.E.2d at 314 (emphasis added). Therefore, according to the very case argued by Vanderwerff, it is entitled to only the profit and not the full contract price.

[¶ 15] We hold the trial court's award of damages under SDCL 57A-2-708(2) is not authorized by the applicable law. Therefore, we reverse and remand for a determination of the profit derived from the resale of the disc. Such profit, plus interest, is the amount to which Vanderwerff is entitled as a lost volume seller.

### Attorney Fees

[¶ 16] Vanderwerff asserts that it is entitled to attorney fees incurred in defending this appeal pursuant to SDCL 15–17–38,[3] as well as its provision in the retail order form signed by McCance which states: "Purchaser also agrees to pay all expenses, including reasonable attorney's fees, to the extent permitted by law, incurred in the collection, by suit or otherwise, of any amount payable under this contract."

[¶ 17] It is settled law that attorney fees are allowed in actions only when specifically provided by statute or agreement of the parties. *In re Rich*, 520 N.W.2d 63, 69 (S.D. 1994); *Meisel v. Piggly Wiggly Corp.*, 418 N.W.2d 321, 325 (S.D.1988); *Lowe v. Steele Constr. Co.*, 368 N.W.2d 610, 614 (S.D.1985). While Vanderwerff points to SDCL 15–17–38, the following statute, SDCL 15–17–39, states that "[a]ny provision contained in any note, bond, mortgage or other evidence of debt that provides for payment of attorney's fees in case of default of payment or foreclosure is against public policy and void[.]" Since the retail form is evidence of debt providing for payment of attorney fees upon default, the provision is void.

[¶ 18] Furthermore, an agreement concerning attorney fees should be a "fairly negotiated fee between the parties[.]" *In re Estate of Schuldt* 428 N.W.2d 251, 256 (S.D. 1988) (holding also that the fee must be reasonable). In this case, there is no evidence of negotiation between McCance and Vanderwerff on the matter of attorney fees, as the aforementioned clause is in fine print. However, we are uncertain on this point, because the trial court made no finding regarding negotiation of attorney fees. In fact, the record reveals the issue of attorney fees was never presented to the trial court. As we have stated numerous times, "issues not addressed or ruled upon by the trial court will not be addressed by this Court for the first time on appeal." *Watertown v. Dakota, Minn. & E. R.R. Co.*, 1996 SD 82, ¶ 26, 551 N.W.2d 571, 577 (citing *Keegan v. First Bank*, 519 N.W.2d 607, 615 (S.D.1994); *Fullmer v. State Farm Ins. Co.*, 514 N.W.2d 861, 866 (S.D.1994); *Hawkins v. Peterson*, 474 N.W.2d 90, 95 (S.D.1991); *Bottum v. Herr*, 83 S.D. 542, 548, 162 N.W.2d 880, 883 (1968); *Schull Constr. Co. v. Koenig*, 80 S.D. 224, 229, 121 N.W.2d 559, 561 (1963)). The issue is therefore waived.

[¶ 19] MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.

---

**3.** SDCL 15–17–38 provides:
   The compensation of attorneys and counselors at law for services rendered in civil and criminal actions and special proceedings is left to the agreement, express or implied, of the parties. . . .