7    51
f102   196

MILLER, *Warden of the State Prison, vs. The trustees of the* MARINER'S CHURCH.

A witness, upon the *voir dire,* may be examined respecting contracts, records or documents not produced at the trial, so far as relates to his interest in the cause.

A member of a corporation who is its surety for the payment of a debt not in controversy in the suit on trial, is not on that account an incompetent witness for the corporation.

A member of an eleemosynary corporation, having no pecuniary interest, is a competent witness, in a suit in which the corporation is a party. *Semble.*

If the party entitled to the benefit of a contract, can protect himself from a loss arising from the breach thereof, at a trifling expense, or with reasonable exertions, it is his duty to do it. And he can charge the delinquent party with such damages only as, with reasonable endeavors and expense, he could not prevent.

THIS was an action of *assumpsit* brought under a special resolve of the legislature, passed *March* 5, 1829, for the price of a quantity of hammered stone; the defendants having leave to claim in offset the amount of damages occasioned by any breach of the contract.

At the trial, before *Weston J.* the defendants offered Mr. *Cutter,* one of the trustees, as a witness. The counsel for the plaintiff proposed, with a view to show his interest in the cause, to ask him if he was not responsible as surety for the defendants for the payment of money which they owed. Before this question was answered, the defendants' counsel asked him if he was so responsible by reason of any verbal contract; and he stating that he was not, they objected to any parol evidence of his liability, insisting on the production of the written contract. This objection the judge overruled; and the witness thereupon testified that he was surety for the defendants on certain promissory notes given for monies borrowed. But notwithstanding this liability, the judge admitted him as a competent witness.

Several witnesses on the part of the defendants positively testified that the late warden of the State prison agreed that the stones, which he contracted to furnish for the use of the defendants, should be delivered at *Portland* by the fifteenth day of *June*, 1828. But the late warden as positively testified that he did not and would not agree absolutely that they should be delivered at that time; but promised that he would endeavor and do the best he could to cause them to be delivered as early as that.

The stones not having been wholly furnished till *November* following, the counsel for the defendants insisted that, from the evidence adduced, they were entitled to damages, whether the contract was found to be such as was testified by their witnesses, or by the late warden. If according to the former, then they were entitled to large damages arising from loss of labor, loss of rents, and the defective character of the work. If by the latter, they still contended that the contract had been violated, but claimed damages upon a basis less definite and extensive.

The judge instructed the jury that if they believed that the contract was such as was testified by the defendants' witnesses, they ought to allow to the defendants the whole or such parts of their claim for damages, as the parties, bestowing proper attention upon the subject, at the time of making the contract, might have contemplated as likely to result from its nonfulfilment. At the request of

the counsel for the plaintiff, he further instructed them that if the contract was for delivery of the stones by a fixed time, the defendants would, in that case, be entitled to no more damages than they had or would have sustained, if, when the time of delivery had expired, they had stopped the receiving of any more from the warden, and had proceeded, with due diligence, to furnish themselves elsewhere;—and that had the materials been bricks or boards, which could readily have been procured at short notice, in the place where their building was being erected, the measure of damages would have been to estimate what would have been sufficient for the necessary delay and additional price, if any. The counsel for the defendants objecting to this instruction, the judge added, at their request, that if the defendants were prevented or deterred, by the conduct or assurances of the plaintiff after the breach of the contract, from stopping the further receipt of stones from him, and proceeding to supply themselves elsewhere, there ought to be no mitigation of damages upon the ground suggested by the counsel for the plaintiff. He further proceeded to instruct the jury, that from the encouragement which the defendants received from the plaintiff, after the alleged breach of the contract, that the stones should be furnished with all possible despatch, and the time which would necessarily be required to prepare them if they had then ordered them from another quarter; it did not seem that common prudence or a due regard to their interests, or the interest of the plaintiff, required them to have taken any other course than they did take.

The jury, under these instructions, allowed certain damages to the defendants, and returned a verdict for the plaintiff for the balance of his account; which was taken subject to the opinion of the court upon the correctness of the instructions given, and the admissibility of the parol testimony received from Mr. *Cutter.*

The cause was submitted without argument by *R. Williams* and *Allen* for the plaintiff, and *Sprague* and *Evans* for the defendants; and the opinion of the Court was delivered in this term by

WESTON J. The first witness, offered by the defendants, was admitted as competent, notwithstanding the interest attempted to be

shown by the parol testimony objected to by them. The interest is nothing more, than every surety has in the solvency and ability of his principal; or a creditor in that of his debtor. It is an interest going to his credibility. But the fact from which it arises, like every other fact proved in the trial of a cause, should not be made out from testimony liable to legal objection. And if the parol testimony received to prove the interest of the witness was of this character, the verdict cannot be supported. The examination of the witness to ascertain his interest, was in effect upon the *voir dire*. It was a preliminary inquiry, not a part of the issue on trial, which is to be proved by the best evidence; a rule well known, and with which every party is, or ought to be, prepared to comply. But an objection to a witness on the ground of interest, is often unexpectedly made. Neither the witness therefore, nor the party producing him, can be reasonably required to have with them written papers or documents, which may happen to be referred to upon such an inquiry. The witness is to make true answers to such questions as may be put to him; and his mouth is not to be stopped, as to any fact within his knowledge, by a technical rule, which is altogether just and proper, with respect to facts involved in the issue. Has he given a note? Has he given a deed? Is he a member of a certain corporation?— Doubtless the production of the note, the deed, and the books of the corporation, would be the best evidence of these facts. But they are within the knowledge of the witness; and the party objecting has a right to appeal to him upon the *voir dire*. A different rule would not only be unnecessary, but exceedingly inconvenient in practice, as it would occasion the delay or the continuance of a cause from time to time, as objections of this sort might successively arise, in the progress of a trial. It is laid down in the text of *Starkie* on evidence, *part* 1, 121, and *part* 2, 756, that a witness upon the *voir dire*, may be examined as to the contents of documents not produced. If however the witness produces the written document upon the *voir dire*, it must be read. *Butler v. Carver*, 2 *Starkie's cases*, 433. But the exception proves the rule; which was in that case admitted to exist. And we are of opinion the testimony objected to was admissible.

By the common law, the estimation of damages is within the province of the jury. Courts may, and often do, in cases of manifest excess, interfere by granting a new trial. Where the injury affects the personal feelings, this is rarely done. And in cases of fraud or wanton trespass, considerable latitude has been allowed. But where there exists a fixed standard or scale, by which damages may be calculated, a jury will not be permitted to depart from it. Thus *assumpsit*, instead of debt, is now the remedy universally resorted to, upon simple contracts for the payment of money. By the form of the action, damages are sought for the nonperformance ; but the measure of damages is the debt due, with interest for the detention, for a longer or shorter period, according to circumstances. In other cases, arising from the nonperformance of agreements, the standard is less definite ; and necessarily attended with greater uncertainty. In general, the delinquent party is holden to make good the loss occasioned by his delinquency. But his liability is limited to direct damages, which, according to the nature of the subject, may be contemplated or presumed to result from his failure. Remote or speculative damages, although susceptible of proof, and deducible from the nonperformance, are not allowed.

And if the party injured has it in his power to take measures, by which his loss may be less aggravated, this will be expected of him. Thus in a contract of assurance, where the assured may be entitled to recover for a total loss, he, or the master employed by him, becomes the agent of the assurer to save and turn to the best account, such of the property assured, as can be preserved.

The purchaser of perishable goods at auction, fails to complete his contract. What shall be done ? Shall the auctioneer leave the goods to perish, and throw the entire loss upon the purchaser ? That would be to aggravate it unreasonably and unnecessarily. It is his duty to sell them a second time, and if they bring less, he may recover the difference, with commissions and other expenses of resale, from the first purchaser.

If the party entitled to the benefit of a contract, can protect himself from a loss, arising from a breach at a trifling expense, or with reasonable exertions, he fails in social duty, if he omits to do so, re-

gardless of the increased amount of damages, for which he may intend to hold the other contracting party liable. *Qui non prohibet, cum prohibere possit, jubet.* And he who has it in his power to prevent an injury to his neighbor, and does not exercise it, is often in a moral, if not in a legal point of view, accountable for it. The law will not permit him to throw a loss, resulting from a damage to himself, upon another, arising from causes for which the latter may be responsible, which the party sustaining the damage, might by common prudence have prevented. For example; a party contracts for a quantity of bricks to build a house, to be delivered at a given time; and engages masons and carpenters to go on with the work. The bricks are not delivered. If other bricks of an equal quality, and for the stipulated price, can be at once purchased on the spot, it would be unreasonable, by neglecting to make the purchase, to claim and receive of the delinquent party, damages for the workmen, and the amount of rent, which might be obtained for the house, if it had been built. The party, who is not chargeable with a violation of his contract, should do the best he can in such cases, and for any unavoidable loss occasioned by the failure of the other, he is justly entitled to a liberal and complete indemnity.

The instructions of the judge to the jury objected to by the counsel for the defendants at the trial, were in conformity with these principles, and in the opinion of the court not liable to legal objection.          *Judgment on the verdict.*