**BULK OIL (U.S.A.), INC., a New York Corporation (formerly Western Hemisphere Bulk Oil (U.S.A.), Inc.), Plaintiff-Appellee,**

v.

**SUN OIL TRADING COMPANY, a Delaware Corporation, Defendant-Appellant,**

and

**Bulk Oil Holding A.G. and Bulk Oil (ZUG) A.G., Additional Defendants on Counterclaim.**

**No. 172, Docket 82–7301.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1982.

Decided Jan. 4, 1983.

John M. Delehanty, New York City (Parker Auspitz Neeseman & Delehanty, P.C., Mark P. Ladner and Michael A. Becker, New York City, of counsel), for defendant-appellant.

Lloyd De Vos, New York City (De Vos & Co., P.C., Marcia Eisenberg, New York City, of counsel), for plaintiff-appellee.

Before OAKES and WINTER, Circuit Judges, and MacMAHON,* District Judge.

MacMAHON, District Judge.

This is an appeal by defendant-appellant Sun Oil Trading Company ("Sun") from a judgment of the United States District Court for the Southern District of New York, Charles E. Stewart, Jr., Judge, in favor of plaintiff-appellee Bulk Oil (U.S.A.), Inc. ("Bulk"). Sun does not question its liability for the contract price of fuel oil which it agreed to buy from Bulk but challenges the amount and other items of damages awarded by the district court. We affirm in part and reverse in part.

The essential facts are that Bulk contracted with Sun to sell Sun approximately $4,000,000 worth of fuel oil. In order to perform, Bulk bought the oil from a third-party supplier and financed the transaction by borrowing almost all of the cost from Chase Manhattan Bank ("Chase"). Sun accepted delivery from Bulk but refused to pay. After the breach, Bulk incurred further interest charges on the Chase loan which it paid on a monthly basis.

Invoking N.Y. UCC § 2–709(1)(a) (McKinney 1964),[1] Bulk sued Sun for the contract price. The district court granted summary judgment in favor of Bulk for the contract price, leaving "for further consideration the question of incidental damages." Later, on application of Bulk, the court awarded incidental damages for post-breach interest payments by Bulk on the Chase loan, together with statutory pre-verdict interest under N.Y. CPLR § 5001 (McKinney 1963),[2] on Bulk's post-breach interest payments to Chase and on the unpaid purchase price.

Sun argues that the court below erred in awarding (1) Bulk's post-breach interest payments to Chase as incidental damages under UCC § 2–709, (2) both Bulk's post-breach interest payments to Chase and statutory pre-verdict interest on the contract price, and (3) statutory interest on Bulk's post-breach interest payments to Chase.

### INCIDENTAL DAMAGES FOR SELLER'S POST-BREACH INTEREST PAYMENTS

█ Whether an aggrieved seller in this diversity case may recover from a breach-

---

* Of the Southern District of New York, sitting by designation.

1. UCC § 2–709(1)(a) provides, in part: "When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price of goods accepted...."

2. CPLR § 5001 provides, in part: "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract...."

ing buyer as incidental damages post-breach interest payments by the seller on a loan taken by the seller to finance the transaction depends on New York law. New York has adopted the Uniform Commercial Code, which provides, in pertinent part, that "when the buyer fails to pay the price . . . the seller may recover . . . any incidental damages. . . ." N.Y. UCC § 2–709(1)(a).

As used in the relevant sections, N.Y. UCC §§ 2–706, 2–708, and 2–709, "incidental damages to an aggrieved seller include any commercially reasonable charges . . . resulting from the breach." N.Y. UCC § 2–710.[3] The Official Comment to § 2–710 states, in part:

> Purposes: To authorize reimbursement of the seller for expenses reasonably incurred by him as a result of the buyer's breach. The section sets forth the principal normal and necessary additional elements of damage flowing from the breach *but intends to allow all commercially reasonable expenditures made by the seller.* (Emphasis added.)

Counsel have not cited, nor have we found, any New York case under UCC § 2–709 holding that incidental damages include post-breach interest payments by an aggrieved seller on a loan made by the seller to finance the transaction. There is

New York authority, however, for awarding an aggrieved seller finance charges as incidental damages in a suit under § 2–708.[4] That section, in pertinent part, provides that a seller's damages for non-acceptance or repudiation by the buyer is the difference between the market price and the unpaid contract price, "together with any incidental damages provided in this Article (Section 2–710). . . ."

In *Neri v. Retail Marine Corp.,* 30 N.Y.2d 393, 285 N.E.2d 311, 334 N.Y.S.2d 165 (1972), the seller, a dealer in boats, contracted to sell a specified model to a customer. The customer made a substantial deposit to induce the dealer to arrange with the manufacturer for immediate delivery. The dealer took delivery, but the customer reneged. The Court of Appeals awarded the dealer the profit lost on the sale plus the dealer's expenses "for storage, upkeep, *finance charges* and insurance for the period between the date performance was due and the time of the resale" to a subsequent customer. *Id.* at 401, 285 N.E.2d at 315, 334 N.Y.S.2d at 170 (emphasis added).

Similarly, in *Intermeat, Inc. v. American Poultry, Inc.,* 575 F.2d 1017 (2d Cir.1978), the seller incurred finance charges directly attributable to a shipment of meat wrongfully rejected by the buyer, basing its claim on UCC § 2–706(1)[5] which makes the buyer

3. UCC § 2–710 provides:
 Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.

4. UCC § 2–708 provides:
 (1) Subject to subsection (2) and to the provisions of this Article with respect to proof of market price (Section 2–723), the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this Article (Section 2–710), but less expenses saved in consequence of the buyer's breach.
 (2) If the measure of damages provided in subsection (1) is inadequate to put the seller

in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article (Section 2–710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

5. UCC § 2–706(1) provides:
 Under the conditions stated in Section 2–703 on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this Article (Section 2–710), but less expenses saved in consequence of the buyer's breach.

liable to the seller, in the case of wrongful breach, for "the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of ... (Section 2–710). . . ." We held that incidental damages include finance charges incurred incidental to the breach, as distinguished from consequential damages resulting from relations with third parties. In so doing, we adopted the reasoning of the New York Court of Appeals in *Neri, supra,* to the effect that "the purpose of the Commercial Code was 'to put the seller in as good a position as performance would have done.' Section 2–708(2)." We noted that the significance of the *Neri* decision was that the Court of Appeals did not limit the scope of "incidental damages" to include only the activities enumerated in § 2–710, such as expenses incurred by the aggrieved seller for transportation, care, and custody of the goods. Harmonizing our interpretation of New York law with that of the Court of Appeals, we gave a broad meaning to reasonable charges, expenses, or commissions incurred, reimbursement of which was necessary to make the plaintiff whole.[6]

In light of these precedents, we have no difficulty holding that Bulk's post-breach interest payments on its Chase loan are incidental damages within the meaning of § 2–709. The interest payments were commercially reasonable and foreseeable in this $4,000,000 transaction and were no less directly attributable to Sun's breach than were the finance charges in *Neri* and *Intermeat.* We see no reason why the treatment of a seller's finance charges as incidental damages should depend on whether suit is brought under § 2–708 as in *Neri,* § 2–706

as in *Intermeat,* or § 2–709 as in the instant case. Quite the contrary. The statutory definition of "incidental damages" contained in § 2–710 makes no such distinction. Nor would such a distinction serve the purpose of the Uniform Commercial Code to put the aggrieved party "in as good a position as if the other party had fully performed." UCC § 1–106(1).[7]

Sun argues that incidental damages include only those expenses contracted by the seller *after* the buyer's breach and occasioned by such things as the seller's need to care for and, if necessary, dispose of the goods in a commercially reasonable manner. The argument is apparently based on *Nobs Chemical, U.S.A., Inc. v. Koppers Co.,* 616 F.2d 212, 216 (5th Cir.1980), a case applying Texas law and not involving finance or interest charges. The short answer to this argument is that it flies in the face not only of *Neri* and *Intermeat,* but also of the facts. Had Sun paid the purchase price on the due date, Bulk would have paid off its indebtedness to Chase and no further interest charges would have been incurred. The interest payments recoverable here were all made after Sun's breach. Accordingly, we find Sun's argument untenable and hold that the finance charges incurred here were properly awarded as incidental damages under UCC § 2–709.

## STATUTORY INTEREST

We will next consider the district court's award of statutory interest on Bulk's post-breach interest payments to Chase.

The award of statutory pre-verdict interest under N.Y. CPLR § 5001 (McKinney 1963) is founded on the fact that the ag-

---

**6.** There is another relevant case, *Petroleo Brasileiro, S.A. Petrobas v. Ameropan Oil Corp.,* 372 F.Supp. 503 (E.D.N.Y.1974). In that case, the buyer accepted but refused to pay for a delivery of fuel oil. The buyer sued under N.Y. UCC § 2–709 for the contract price and $75,-000 in "banking charges" as incidental damages. *Id.* at 507. In ruling that these "banking charges" were consequential, not incidental, damages and thus not recoverable under the Uniform Commercial Code, the district court made plain that these were not ordinary interest charges, but rather a *sui generis* penalty

allegedly required by Brazilian Exchange Regulations. *See id.* at 507–09 & n. 24.

**7.** UCC § 1–106(1) provides:

The remedies provided by this Act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in this Act or by other rule of law.

grieved party has been damages by a loss of the use of money or its equivalent and that unless interest is added the party aggrieved is not made whole. Statutory interest is compensation for the use of money.[8]

The post-breach interest charges incurred here were deducted by Chase from Bulk's account on a monthly basis and were thus out-of-pocket payments. Bulk lost use of its money from the date of each payment and can only be made whole for such damage by recovery of statutory pre-verdict interest from the date of each such payment. Bulk is no less entitled to recover statutory interest on such expenditures than it would be on any other expense cognizable as incidental damages under UCC § 2–710. Indeed, Sun concedes that if Bulk is entitled to recover its actual interest payments as incidental damages, it is entitled to statutory pre-verdict interest on these payments.[9]

Turning to the district court's award of statutory interest on the contract price, we reverse as to that portion of the contract price which Bulk would have used to pay off its Chase loan and affirm as to the remainder. We consider first that portion of the contract price which Bulk would have used to pay off the loan.

 It is clear from our discussion of N.Y. UCC § 2–709 and N.Y. CPLR § 5001 that the legislative purpose of each statute is to put the aggrieved party in as good a position as performance would have done. Having recovered its actual interest charges as incidental damages under UCC § 2–709, Bulk is in as good a position as it would have been in had Sun performed. An award of statutory interest would amount to a double recovery. As the Appellate Division has noted,[10] the rate used in com-

puting statutory interest is an *assumption* about the value of the use of money. When the aggrieved party has been awarded its actual interest charges, this assumption is not necessary because the *actual* value of the use is known.

It is for these reasons that we awarded the aggrieved seller its actual finance charges, instead of interest at the statutory rate, in *Intermeat, supra.* There, the buyer wrongfully rejected goods, sold them for less than the contract price, and remitted the proceeds to the seller. The district court denied recovery of the actual interest charges incurred by the seller on a loan to finance the transaction but awarded the seller statutory interest on the contract price for the period before the seller resold the goods and on the difference between the contract price and the resale price for the period after the resale. The seller argued on appeal that "it [was] entitled to recover its actual financing charges attributable to the breach in lieu of the statutory interest awarded by the court." 575 F.2d at 1024. Following *Neri, supra,* we accepted this argument and directed the district court to amend the judgment by withdrawing the award of statutory interest "for those periods during which the seller incurred finance charges directly attributable to the shipment rejected by [the buyer], and awarding in lieu thereof the finance charges actually incurred." 575 F.2d at 1024.

 Similarly, in the instant case, the contract called for Sun to pay Bulk $3,892,-807.52 by June 4, 1981. On that date, Bulk owed Chase $3,860,000.00 on the loan. Because Sun did not pay when it should have under the contract, Bulk was forced to make monthly interest payments to Chase. Now that Sun has paid Bulk the contract

**8.** *See De Long Corp. v. Morris-Knudsen Co.,* 14 N.Y.2d 346, 348, 200 N.E.2d 557, 251 N.Y.S.2d 657, 659 (1964); *Prager v. New Jersey Fidelity & Plate Glass Ins. Co.,* 245 N.Y. 1, 6, 156 N.E. 76, 77 (1927); *Rachlin & Co. v. Tra-Mar, Inc.,* 33 A.D.2d 370, 308 N.Y.S.2d 153 (1st Dep't 1970); *Lesjac Realty Corp. v. Mulhauser,* 43 Misc.2d 439, 251 N.Y.S.2d 62 (Sup.Ct. Nassau Co.1964).

**9.** Reply brief at 12.

**10.** *Rachlin & Co. v. Tra-Mar, Inc., supra,* 33 A.D.2d at 374, 308 N.Y.S.2d at 157 ("Upon the assumption that the value of the use of the principal sum to the creditor during the default of the debtor would equal interest at the statutory rate, the law properly measures his loss of such use at the statutory rate.").

price and we have ruled that Sun must reimburse Bulk for Bulk's monthly payments (and also pay Bulk statutory interest on the monthly payments), Bulk is in the position it would have been in had Sun paid Bulk in performance of the contract.[11] An award of statutory interest to Bulk on that part ($3,860,000.00) of the contract price which Bulk would have used to pay off the loan would be a windfall.[12]

This analysis, however, does not apply to the excess of the contract price over the amount of the loan, $32,807.52. Had Sun performed the contract by paying Bulk the $32,807.52 due June 4, 1981, Bulk would have paid off the loan and had $32,807.52 left over. Bulk has lost the use of that sum since June 4, 1981 and to be made whole is entitled to be compensated by an award of statutory interest on this amount from June 4, 1981 to the date Sun paid Bulk the full contract price.

Accordingly, we reverse so much of the judgment as awards statutory interest on all of the contract price and direct the district court to amend the judgment by withdrawing all of such award except for such interest upon the sum of $32,807.52. The judgment is affirmed in all other respects.

---

11. Bulk also must receive statutory interest on the amount by which the contract price exceeds the amount due on the loan.

12. Referring to the statutory language, "[i]nterest shall be recovered," Bulk argues that statutory interest is mandated by CPLR § 5001. We reject the argument. Our function is not to read the statute literally but to give effect to the legislative intent. *See National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) (citing *Neuberger v. Comm'r,* 311 U.S. 83, 88, 61 S.Ct. 97, 101, 85 L.Ed. 58 (1940); *Knapp v. McFarland,* 462 F.2d 935, 939 (2d Cir.1972). *See also Sierra Club v. Train,* 557 F.2d 485, 489 (5th Cir.1977). The clear purpose of both statutes is to put the aggrieved party in as good a position as per-

formance would have done. In such a case, we apply the principle that a more specific statute governs over a more general one. *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980); *see Thielebeule v. M/S Nordsee Pilot,* 452 F.2d 1230, 1232 (2d Cir.1971) (quoting *United States v. City of Chester,* 144 F.2d 415, 421 (3d Cir. 1944); *Essenfeld v. Comm'r,* 311 F.2d 208, 210 (2d Cir.1962). Plainly, UCC § 2–709 is specifically applicable to contracts for the sale of goods, N.Y. UCC § 1–102 (McKinney 1964); *see id.* § 2–701; whereas CPLR § 5001 is of general application, among other things, to breach of any contract. *See also Marine Midland Bank-Rochester v. Vaeth,* 88 Misc.2d 657, 661, 388 N.Y.S.2d 548, 551 (1976).