**MASTERS MACHINE CO., INC., Plaintiff,**

v.

**BROOKFIELD ATHLETIC SHOE CO., INC., Defendant.**

No. Civ. 84–0161–B.

United States District Court, D. Maine.

June 5, 1987.

Catherine B. Johnson, Lynch & Seaberg, Damariscotta, Me., for plaintiff.

Graydon G. Stevens, Barry Zimmerman, Portland, Me., for defendant.

**MEMORANDUM, ORDER AND DIRECTION FOR ENTRY OF JUDGMENT**

CYR, Chief Judge.

Plaintiff Masters Machine Co., Inc. [Masters] sued Brookfield Athletic Shoe Co., Inc. [Brookfield] for breach of a contract to purchase from Masters components to be used in the manufacture of roller skates. The jury awarded Masters $59,944.11 in damages representing the balance due under the contract.

The trial judge precluded Masters from presenting evidence of interest expense allegedly incurred by Masters as incidental damages resulting from Brookfield's failure to pay the full contract price when due. Masters appealed. The First Circuit agreed with Masters that the Maine Uniform Commercial Code (U.C.C.) permits recovery of interest expense as an item of incidental damages. *See* Me.Rev.Stat.Ann. tit. 11, § 2–710. The case was remanded "for such proceedings as may be necessary for determining whether post-breach interest paid by appellant is recoverable and, if so, the amount of such interest." *Masters Machine Co., Inc. v. Brookfield Athletic Shoe Co. Inc.*, 802 F.2d 439 (1st Cir.1986).

After remand, another petit jury found that Masters had incurred $46,528.63 in commercially reasonable interest expense as a result of Brookfield's breach of contract.

1. *The Instructions On Incidental Damages*

Brookfield contends that the court erred in refusing to instruct the jury that Masters had a general duty to mitigate damages.[1]

---

1. Brookfield requested the following jury instruction:

When a contract has been breached, the nonbreaching party has an affirmative duty to take reasonable steps to mitigate its damages.

The law makes it incumbent upon a person for whose injury or damage another is responsible, to use ordinary care and take all reasonable measures within his control to avoid the loss and render the consequences as light as may be; it will not permit him to recover for such losses as by such care and means might have been prevented.

If you find that Masters failed to take reasonable steps to minimize its damages, you must deduct the amount of loss that could have been avoided through such steps from the amount that would otherwise have been recoverable as damages.

Brookfield's Requested Jury Instruction No. 5.

Brookfield requests that the court certify a question of law to the Maine Supreme Judicial Court, pursuant to Me.R.Civ.P. 76B.

On April 2, 1987, the court denied Brookfield's motion for certification. Me.Rev. Stat.Ann. tit. 4, § 57 provides, in part:

When it shall appear to the Supreme Court of the United States, or to any court of appeals or district court of the United States, that there are involved in any proceeding before it one or more questions of law of this State, *which may be determinative of the cause, and there are no clear controlling precedents* in the decisions of the Supreme Judicial Court, such federal court may certify any such question of law of this State to the Supreme Judicial Court for instructions concerning such questions of state law, which certificate the Supreme Judicial Court sitting as a law court, may, by written opinion, answer.

*Id.* (emphasis added).

 It has not been shown that resolution of the mitigation issue would be "determinative of the cause." *See Hiram Ricker & Sons v. Students Int'l Meditation Soc.*, 342 A.2d 262, 264 (Me.1975). Moreover, the very authority cited by Brookfield in support of its alternative motion for new trial is a clear controlling precedent of the Maine Supreme Judicial Court supporting the contrary position. *See* text at p. 442 *infra.* Thus, certification of the mitigation issue is neither necessary nor permissible in these circumstances.

Brookfield alternatively argues that "[a] new trial should be granted so the jury may consider the issue of mitigation." Citing *Schiavi Mobile Homes, Inc. v. Gironda*, 463 A.2d 722 (1983), Brookfield asserts that the Maine Law Court has held that a duty to mitigate damages is implicit in the U.C.C. and, therefore, that this court should have instructed the jury on a general duty to mitigate incidental damages.

*Schiavi* involved a breach of contract for the sale of a mobile home. After defendant failed to consummate the purchase, plaintiff sold the mobile home to a third party and sued for lost profits and interest expense. The trial court awarded plaintiff its lost profits and the interest expense actually incurred as a result of the breach. On appeal, defendant argued that the trial court erred in failing to consider the alleged failure of plaintiff to mitigate its damages. Specifically, defendant's father testified that he was willing to purchase the mobile home in place of his son, but was told by plaintiff's agent that that would not be necessary. The Law Court ruled that the trial court should have considered plaintiff's failure to mitigate:

It has long been the rule in this state that when a contract is breached, the nonbreaching party has an affirmative duty to take reasonable steps to mitigate his damages. As early as 1830 this Court declared that if a party "has it in his power to take measures, by which his loss may be less aggravated, this will be expected of him." *Miller v. Mariner's Church*, 7 Me. 51, 55 (1830).

. . . .

The common law duty to mitigate damages survives Maine's enactment of the Uniform Commercial Code in 1963. While the U.C.C. does not explicitly require the mitigation of damages, it does provide that "principles of law and equity" not displaced shall supplement the Code's provisions. 11 M.R.S.A. § 1–103 (1964). *The duty to mitigate is also implicit in the Code's broad requirements of good faith, commercial reasonableness and fair dealing. See American National Bank and Trust Company of Chicago v. Weyerhaeuser Company*, 692 F.2d 455, 468 (7th Cir. 1982); 11 M.R.S.A. §§ 1–203, 2–103 (1964); *see also* 11 M.R.S.A. § 1–106, Comment 1 (1964) ("damages must be minimized").

*The touchstone of the duty to mitigate is reasonableness.* The nonbreaching party need only take reasonable steps to minimize his losses; he is not required to unreasonably expose himself to risk, humiliation or expense.

463 A.2d at 724–25 (footnotes omitted, emphasis added).

The plaintiff in *Schiavi* had appealed the trial court's decision to limit the award of interest to the period during which interest was actually incurred, rather than for the entire period of the breach.[2] The Law Court affirmed that portion of the trial court's decision:

> Several of the seller's remedies provided under the Uniform Commercial Code for breach of contract permit the recovery of incidental damages. *See* 11 M.R.S.A. §§ 2–706, 2–708, 2–709 (1964). The Code defines "seller's incidental damages" as follows:
>
> > Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.
>
> 11 M.R.S.A. § 2–710.
>
> While we would agree that floor-plan interest actually paid by a seller after a breach may constitute recoverable incidental damages, *see Bulk Oil (U.S.A.), Inc. v. Sun Oil Trading Company,* 697 F.2d 481, 483 (2d Cir.1983); *Neri v. Retail Marine Corp.,* 30 N.Y.2d 393, 401, 285 N.E.2d 311, 315, 334 N.Y.S.2d 165, 170 (1972), we cannot read the phrase "commercially reasonable charges, expenses or commissions" as including wholly hypothetical charges that a seller would assert as arising out of the use of his own funds to pay off a loan. The Official Comment to section 2–710 states that the section "intends to allow all commercially reasonable *expenditures* made by the seller." (Emphasis added). Interest a seller would purport to pay itself is not an expenditure. Accordingly, in denying the Plaintiff floor-plan interest extending beyond the actual payment of such interest, the Superior Court committed no error.

463 A.2d 726–27 (footnotes omitted).

Like the plaintiff in *Schiavi*, Masters relies on U.C.C. § 2–710 to support its claim for incidental damages. The court charged the jury that Masters had to prove, by a preponderance of the evidence, that the alleged interest expense was *incurred as a result* of Brookfield's breach and that any such interest expense was commercially reasonable. The court ruled against Brookfield's request for a further jury instruction on the general duty to mitigate incidental damages, for two principal reasons.

First, the court considers that the *Schiavi* incidental damages standard of commercial *reasonableness* subsumes the more general mitigation of damages requirement under the U.C.C., *see* 463 A.2d at 725, and that an instruction on the latter was therefore unnecessary and likely to confuse the jury. Second, the court considers that the requested instruction on the general duty to mitigate damages[3] unduly restricts the commercial reasonableness standard prescribed in *Schiavi* for application in the context of incidental damages. *See* 463 A.2d at 727.

Brookfield's contention[4] is supported neither by *Schiavi* nor by the U.C.C.

---

**2.** The interest which plaintiff sought to recover was "floor-plan interest," interest a retailer pays to borrow money to purchase inventory for resale. *See* 463 A.2d at 726 n. 7. Plaintiff's contention on appeal was as follows:

> The Plaintiff also contends that the Superior Court erred in not awarding it "floor-plan interest" for the entire period between the date of breach (April 20, 1979) and the date of resale (November 7, 1979). The court did award the Plaintiff floor-plan interest from April 20 to August 17, 1979, the date on which the Plaintiff paid off a loan which it had taken out to purchase the mobile home in question. The Plaintiff claims that it was entitled to floor-plan interest on the use of its own money tied up in the mobile home after the loan had been repaid; that is, from August 17 to November 7, 1979.
>
> *Id.* at 726.

**3.** *See* note 1 *supra.*

**4.** The mere fact that the interest expenses it incurred were found by the jury to be commercially reasonable does not mean that the jury could not also have concluded that alternative reasonable steps were available to Plaintiff to minimize such expenses. The two concepts are not necessarily mutually exclusive.

Brookfield's Memorandum, at 1.

*Schiavi* makes it clear that incidental damages are those *commercially reasonable expenses actually incurred as a result of the breach* of contract. *See* 463 A.2d at 727. But Brookfield's rationale for the requested instruction would have it that commercially reasonable expenses actually incurred as a result of the breach would not be recoverable if "alternative reasonable steps were available to Plaintiff to minimize such expenses."

Not only does the U.C.C. not restrict incidental damages in such a manner, it is intended to permit the injured party to recover "all commercially reasonable expenditures." U.C.C. Comment to § 2–710. The Official Comment to § 2–710 states that the purpose of the section is

> [t]o authorize reimbursement of the seller for expenses reasonably incurred by him as a result of the buyer's breach. The section sets forth the principal normal and necessary additional elements of damage flowing from the breach but *intends to allow all commercially reasonable expenditures made by the seller.*

U.C.C. § 2–710 Official Comment (emphasis added); *see also Schiavi*, 463 A.2d at 727 (citing Official Comment).

On the basis of the Official U.C.C. Comment to § 2–170, and *Schiavi*, the requested jury instruction is not only unnecessary and confusing, it misstates the law.

The jury determined that (1) the claimed interest expense *was incurred* by Masters, (2) as a *result of* Brookfield's *breach*, and (3) that it was *commercially reasonable.* Nothing more was required. Brookfield's motion for new trial is *DENIED.*

### 2. *Prejudgment Interest*

Prior to the trial on incidental damages, Brookfield requested that any incidental damages awarded by the jury be offset by the amount of statutory prejudgment interest previously paid by Brookfield.

Following the first trial, Brookfield paid Masters its $59,944.11 contract damages award, plus $7,001.47 in prejudgment interest assessed pursuant to Me.Rev.Stat.Ann. tit. 14 § 1602. Prior to the second trial, Brookfield argued that an award of inci-

dental damages *plus* statutory prejudgment interest would amount to a double recovery.

■ The court agrees that Masters is not entitled to statutory prejudgment interest for the *entire* prejudgment period. Statutory prejudgment interest is designed to compensate the injured party for the loss of use of money between the date of suit and the date of judgment. *See Inhabitants of Town of Norridgewock v. Inhabitants of Town of Hebron*, 152 Me. 280, 283–84, 128 A.2d 215 (1957); *accord Bulk Oil (U.S.A.), Inc. v. Sun Oil Trading Co.*, 697 F.2d 481, 485 (2nd Circ.1983) [construing New York statute providing for prejudgment interest]. The incidental damages award in this case *is* the interest expense actually incurred by Masters on $59,944.11 of its line of credit, from September 26, 1980, the date of breach, to October 31, 1985, the date when Brookfield paid the $59,944.11 judgment for contract damages previously entered by the court. *See* Master's Trial Exhibit 3. Had Brookfield paid Masters, on October 31, 1985, *both* its contract damages *and* its incidental damages, Masters would have been put in as good a position as it would have been had Brookfield not breached the contract. Thus, any award of statutory prejudgment interest for the period during which these incidental damages were accruing would be duplicative and would constitute a windfall to Masters. *See Bulk Oil*, 697 F.2d at 485 ["the rate used in computing statutory interest is an *assumption* about the value of the use of money. When the aggrieved party has been awarded its actual interest charges, this assumption is not necessary because the *actual* value of the use is known"] (discussing New York prejudgment interest statute).

■ As a result of the procedural course of this particular action, however, Masters was not made whole as of October 31, 1985. Rather, between October 31, 1985 and the date of the judgment to be entered by the clerk pursuant to the within direction for entry of judgment, Masters has been deprived of the use of the amount of money

($46,528.63) awarded by the jury as incidental damages on March 11, 1987. Accordingly, Masters is entitled to statutory prejudgment interest on $39,527.16 (the amount of incidental damages awarded by the jury, $46,528.63, less the $7,001.47 in prejudgment interest paid by Brookfield on October 31, 1985), at the Maine prejudgment interest rate, from October 31, 1985 to the date of the entry of the judgment directed herein.

For the foregoing reasons and pursuant to the mandate of the United States Court of Appeals for the First Circuit, the judgment previously entered in this action is *VACATED.* The Clerk of Court is directed to enter judgment for plaintiff and against defendant in the amount of $106,472.74 ($59,944.11 in contract damages, plus $46,528.63 in incidental damages); plus statutory prejudgment interest on $39,527.16 from October 31, 1985 to the date of entry of judgment, *see* Me.Rev.Stat.Ann. tit. 14, § 1602; costs; and post-judgment interest, *see id.* § 1602–A.

SO ORDERED.