**NORTH AMERICAN FOREIGN TRADING CORP. and Unisonic Products Corporation, Plaintiffs,**

v.

**DIRECT MAIL SPECIALIST, a/k/a DMS, Inc., Defendant,**

v.

**Martin LEVINE, Additional Counterclaim Defendant.**

**No. 83 Civ. 7930 (SWK).**

United States District Court, S.D. New York.

Oct. 7, 1988.

**164**

Schlam Stone & Dolan, New York City by Peter R. Schlam and Richard H. Dolan, for plaintiffs.

Spengler Carlson Gubar Brodsky & Frischling, New York City by Sarah S. Gold and Lawrence Gottesman, for defendant and counterclaim defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this breach of contract action, plaintiffs are suing to recover on a contract through which they were to provide certain goods to defendant. Defendant and the additional counterclaim defendant have counterclaimed for breach of contract and fraud. Presently before the Court is plaintiffs' motion *in limine* for a determination of the proper method of calculating the appropriate amount of statutory pre-judgment interest in this action. The dispute over this legal issue has stymied the parties' attempts at a negotiated settlement.

### BACKGROUND

Based on an affirmation submitted by plaintiffs, the following appear to be the facts relevant to the present motion. In May, 1983, the parties met to discuss the sale of a blackjack game to defendant DMS, Inc. ("DMS"). Through an exchange of correspondence, the parties agreed that plaintiff North American Foreign Trading Corporation ("NAFTC") would supply defendant with a total 164,968 units in minimum monthly installments of 15,000 units at a cost of $12 per unit. Defendant provided plaintiffs with a deposit of $100,000 to be applied only to the last shipment.

NAFTC made monthly shipments of 15,000 units to defendant from May, 1983 through August, 1983. DMS paid the contract price of $12 per unit for each of these shipments. In September, 1983, DMS requested NAFTC to delay the monthly shipments until February or March, 1984 to allow DMS to consume its current inventories. By letter dated September 15, 1983, Gordon Nelms, defendant's representative, stated the reasons for requesting the delay, noted that plaintiffs had refused to delay shipments and then proceeded to cancel the outstanding purchase order for that month. Nelms concluded the letter by stating that "[n]o further shipments will be accepted by this organization."

Plaintiffs commenced this action shortly thereafter. Plaintiffs state that they attempted to sell the remaining 104,968 units, but only managed to sell small quantities during the period from September, 1983 through mid–1986. In mid–1986, plaintiffs began selling the product in bulk to a single purchaser at a price of $11 per unit. All of the units were eventually sold. Plaintiffs still have possession of defendant's $100,000 deposit.

### DISCUSSION

On the assumption that plaintiffs would prevail on all issues, plaintiffs argue that it would be entitled to recover: (1) the contract price of the goods less the amount realized by NAFTC upon resale of the goods, (2) storage and insurance costs and (3) interest at the statutory rate of nine percent (9%) on the full contract price and the storage and insurance costs for the period September, 1983 through the time of resale in mid–1986 and interest on the contract price less the amount received upon

resale for the period of mid–1986 through the time of judgment. Defendant counters that plaintiffs would only be entitled to interest on the net amount of damages, i.e., the contract price plus storage and insurance costs less the amount received upon resale.

Since jurisdiction in this action is premised on diversity of citizenship, the Court will apply New York law. Section 5001(a) of the Civil Practice Law and Rules ("CPLR") of New York states that "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, ..." (McKinney's 1963). Section 5001(b) states that

> Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

Defendant argues that the statute speaks for itself and restricts any computation of interest to the net amount of damages, or the "sum awarded" for breach of performance. Plaintiffs, choosing not to discuss the nuances of this limiting language, stresses that the purpose behind this section and the damage sections of the Uniform Commercial Code as applied in New York is to put a party in the same position it would have enjoyed but for the breach. The Court finds merit in each parties' argument.

Each side calls the Court's attention to a few cases, none of which directly reaches the question presently before the Court. In *Intermeat, Inc. v. American Poultry, Inc.*, No. 76 Civ. 1019 (JBW), slip op. (S.D. N.Y.), *aff'd*, 575 F.2d 1017 (2d Cir.1978), the Court awarded the seller interest on the full contract price for the period from the date of breach until the buyer remitted further monies to seller, and thereafter, on the difference between the contract price and the monies remitted. 575 F.2d at 1024. Although the Court awarded interest consistent with plaintiffs' position in this case, one important difference must be noted. In *Intermeat*, the seller had shipped the goods to the buyer who then repudiated the contract but retained possession of the goods. Similarly, in *Bulk Oil (U.S.A.), Inc. v. Sun Oil Trading Co.*, 697 F.2d 481 (2d Cir.1983), also cited by plaintiff, the buyer accepted delivery of the goods and thereafter repudiated the contract. 697 F.2d at 482. In this case, on the other hand, the seller retained possession of the goods before and after the alleged repudiation. Thus, any argument made that interest should be awarded on the full contract price makes greater sense in the cases cited by plaintiffs in light of the fact that the seller had already delivered the goods to the buyer.

Defendant's cases are also distinguishable, though for different reasons. Defendant cites *Pro-Specialties, Inc. v. Thomas Funding Corp.*, 812 F.2d 797 (2d Cir.1987) for the proposition that interest should be awarded only on the net amount recovered. In that case, the seller sought damages from a third-party guarantor. The buyer defaulted in August, 1982 and the guarantor made only one payment of $5000 in October, 1982. The District Court awarded damages to the seller in the amount of the outstanding invoices less the $5000 received from the guarantor, and then awarded interest on this net amount of damages from the date of breach in August, 1982. 812 F.2d at 800. Although the Court awarded interest in a manner consistent with defendant's position in this case, the Court believes that the cases are factually distinguishable. In *Pro-Specialties*, the delay between the time of breach and the time the seller received the $5000 was only two to three months, and the $5000 received was only a fraction of the amount due. The seller thus received interest on the bulk of the contract price from the date of breach, and the lost time-value of the $5000 for the three months was relatively minuscule. In this case, on the other hand, plaintiffs claim that they had to wait some three years before receiving any significant amount of money due on the contract. Defendant's theory of the

appropriate interest recovery would deny plaintiffs any substantial recovery for the funds not received during those three years.

Under the provisions of New York's Uniform Commercial Code seller's damages can be calculated in a few ways, depending on the circumstances. *See* N.Y.U.C.C. §§ 2–703 *et seq.* (McKinney's 1964); *see generally* Comment, *An Economic View of the U.C.C. Seller's Damage Measures and the Identification of the Lost–Volume Seller*, 49 Albany L.Rev. 889 (1985).[1] The seller may resell the goods and recover the difference between the contract price and the resale price, plus incidental damages, assuming the resale was accomplished in a commercially reasonable time. *Id.* § 2–706. An aggrieved party must mitigate damages by resale if feasible. *See Bache & Co. v. Int'l Controls Corp.*, 339 F.Supp. 341, 351–52 (S.D.N.Y.), *aff'd*, 469 F.2d 696 (2d Cir.1972). If the aggrieved seller fails to resell in a commercially reasonable time, then damages can be calculated as the difference between the unpaid contract price and the market price of the goods at the time and place of tender, plus incidental damages. N.Y.U.C.C. § 2–708(1); *see Bache & Co., supra*, 339 F.Supp. at 352. If that amount is inadequate to put the seller in as good a position as performance would have done, then damages may be calculated by awarding the seller the lost profit, including reasonable overhead and incidental damages. *Id.* § 2–708(2). The seller may also sue for the price of the goods, plus incidental damages, either for goods accepted by the seller or for "goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing." *Id.* § 2–709.

The damages provisions are designed to put the seller in the same position he would have enjoyed had the buyer not breached the contract. *Bulk Oil, supra*, 697 F.2d at 485 (stating in particular that section on incidental damages and CPLR section concerning statutory interest were designed to "put the aggrieved party in as good a position as performance would have done."); *see also* N.Y.U.C.C. § 1–106 (U.C.C. provisions should be construed liberally so that the aggrieved party may be put in the position he would have enjoyed had the other party fully performed). Defendant's proposed method of interest calculation would not put plaintiffs in the same position they would have enjoyed had defendant performed—if resale during the three-year period between the time of breach and mid–1986, when the goods were in fact resold, was not reasonably feasible at a reasonable price. *See* N.Y.U.C.C. § 2–709(1)(b). If resale was not reasonably feasible, then plaintiffs suffered losses during the three-year period for the lost time value of the money they would have received had defendant fully performed.[2]

■■■ In *Bulk Oil*, the Second Circuit recognized that an aggrieved seller could recover as incidental damages interest payments made to a bank that would not have been made had the buyer performed. 697 F.2d at 485. Similarly, in *Intermeat*, the Court awarded as incidental damages finance charges the seller incurred as a result of the buyer's breach. *Id.* (discussing *Intermeat, supra*, 575 F.2d at 1024). The Second Circuit intimated that the time value of money is recoverable in noting that "the rate used in computing statutory interest is an *assumption* about the value of the use of money." *Id.* The Court thus decides that plaintiffs would be entitled to

---

1. This Comment, though quite complete in most respects, does not discuss the time value of money as an element of economic damages, reflecting a lack of discussion of this topic generally in this area.

2. Whether these time value of money losses are labelled as "incidental" damages or as statutory interest under CPLR § 5001 is somewhat of an academic question since both provisions are de-

signed to make the aggrieved party whole. Nonetheless, since CPLR § 5001 limits itself to interest on a "sum awarded", it is better to consider the losses as "incidental". Of course, plaintiff is not entitled to statutory interest on these "incidental" losses, since plaintiff would in essence be enjoying a double recovery. *See Bulk Oil, supra*, 697 F.2d at 485.

recover interest at the statutory rate on the contract price (less the $100,000 deposit) from the date of breach until the time at which the seller could reasonably have resold the goods with reasonable effort for a reasonable price.[3] Plaintiffs are entitled to such interest only if the delay was reasonable under the circumstances. If the delay were unreasonable, plaintiff would be entitled to interest on damages based on the difference between the contract price and the market price at the time of breach or some reasonable time thereafter, *see* N.Y. U.C.C. § 2–708(1), or on the lost profit, *see* N.Y.U.C.C. § 2–708(2).[4] Whether the three-year delay before the goods were resold was reasonable is a question that remains to be resolved at trial.

SO ORDERED.

---

**3.** This language relies on N.Y.U.C.C. § 2–709, since plaintiff seeks to recover interest on the contract price for the three-year period of time prior to resale.

**4.** Damages would be calculated according to § 2–708 rather than § 2–706 (contract price less resale price) since damages are calculated according to the latter section only if the goods were resold within a commercially reasonable period of time. "Commercially reasonable" requires that the "resale occur as soon as practicable following notice of the buyer's refusal to accept tender [of the goods]." *Bache & Co., supra,* 339 F.Supp. at 350. This formulation does not differ substantially from that in § 2–709 which allows for recovery of the price if resale is not reasonably feasible at a reasonable price. If, pursuant to § 2–708, however, the market price or lost profits cannot be determined, the Court may use the eventual resale price as the market price. *Hodes v. Hoffman Int'l Corp.,* 280 F.Supp. 252, 257 (S.D.N.Y.1968).