# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MOVORA LLC (f/k/a OSSIUM )
NEWCO LLC); OSSIUM BIDCO, LLC; )
and VETERINARY ORTHOPEDIC )
IMPLANTS, LLC (f/k/a VETERINARY )
ORTHOPEDICS IMPLANTS, INC.), )
 )
      Plaintiffs/Counterclaim )
      Defendants, )
 )
      v. )  C.A. No. N23C-05-034 MAA CCLD
 )
CLAUDE GENDREAU; THE CLAUDE )
GENDREAU INVESTMENT TRUST )
U/A/D MARCH 16, 2013; PATRICK )
GENDREAU; BRIAN BEALE; and )
TIMOTHY VAN HORSSEN, )
 )
      Defendants/Counterclaim )
      Plaintiffs. )
 )

Date Submitted: September 18, 2025
Date Decided: October 1, 2025

## ORDER REGARDING POST-TRIAL ISSUES

1.     On August 29, 2025, the Court issued its post-trial opinion (the "Opinion") awarding Plaintiffs $40,172,084.49.[1]  Therein, the Court invited the parties to submit letters raising any potential unresolved issues.[2]  In response, the parties confirmed the Opinion established the basis for damages and liability but

---

[1] *Movora LLC v. Gendreau*, 2025 WL 2502457, at *1 (Del. Super. Aug. 29, 2025) ["Op."].  This Order assumes familiarity with the August opinion and uses its defined terms and citation formats.
[2] Op. at *28.

dispute whether it settled the issues of (1) prejudgment interest, (2) contingent closing note offsets, or (3) the indemnity cap's future application.[3] This order resolves all three.

## Prejudgment Interest

2. The core dispute as to prejudgment interest centers on whether Plaintiffs' out-of-pocket loan expenses and the right to prejudgment interest under Delaware law are mutually exclusive forms of compensation. Plaintiffs argue that prejudgment interest is mandatory in indemnification cases and is not negated by an award for actual loan interest.[4] Plaintiffs further assert the Opinion supports this interpretation by awarding compensation for actual interest but not explicitly or implicitly precluding separate prejudgment interest.[5] Having already received actual loan interest, Plaintiffs now seek full compensation through prejudgment interest.[6]

3. Defendants contend that granting both forms of interest (actual and prejudgment) on the loan principal would result in impermissible double recovery, creating a windfall for Plaintiffs.[7] Defendants assert Plaintiffs are not entitled to prejudgment interest on the $70 million DePuy settlement, as Plaintiffs have already been awarded damages representing their out-of-pocket interest expenses used to

---

[3] *See generally* D.Is. 300–01, 304, 306.
[4] D.I. 301 at 2.
[5] *Id.* at 3–4.
[6] *Id.* at 5; Op. at *28.
[7] D.I. 304 at 2.

finance that payment.[8] Defendants maintain that "[b]ecause Plaintiffs used the loan to pay DePuy, they incurred no opportunity cost nor suffered a loss in the time value of money."[9]

4.    The Supreme Court of Delaware has instructed trial courts that a successful plaintiff is entitled to prejudgment interest on money damages as a matter of right, computed from the date liability accrues.[10]  This is not a matter of discretion.[11]  "Prejudgment interest serves two purposes: (1) compensating the plaintiff for the lost use of its money; and (2) divesting the defendant of any benefit it received by retaining the plaintiff's money during the case's pendency."[12]  "Both the compensatory and disgorgement purposes of prejudgment interest arise from the premise that the damages award was 'plaintiff's money'—money that the plaintiff

---

[8] D.I. 300 at 2–3; D.I. 304 at 2.

[9] D.I. 304 at 2.

[10] 6 *Del. C.* § 2301; *Citadel Hldg. Corp. v. Roven*, 603 A2d 818, 826 (Del. 1992) (citing *Moskowitz v. Mayor & Council of Wilm.*, 391 A2d 209, 209–10 (Del. 1978)).  *See also Brandywine Smyrna, Inc. v. Millennium Builders LLC*, 34 A.3d 482, 486 (Del. 2011) (explaining "interest accumulates from the date payment was due the plaintiff, because full compensation requires an allowance for the detention of the compensation awarded and interest is used as a basis for measuring that allowance") (cleaned up); *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 409 (Del. 1988) ("A successful plaintiff is entitled to interest on money damages as a matter of right from the date liability accrues.").  Prejudgment interest typically accrues from the date payment was due to the plaintiff, as full compensation requires accounting for the delay in receiving the awarded amount, with interest serving as the measure for this delay. *Fortis Advisors, LLC v. Dematic Corp.*, 2023 WL 2967781, at *2 (Del. Super. Apr. 13, 2023) (quoting *Moskowitz*, 391 A2d at 210) (explaining that in contractual disputes, courts refer to the contract to determine when prejudgment interest should accrue).

[11] *Fortis*, 2023 WL 2967781, at *1 (citing *Moskowitz*, 391 A.2d at 210).

[12] *Id.*  (citing *Brandywine Smyrna*, 34 A.3d at 486).

would have had in her possession absent wrongdoing."[13]  Although prejudgment interest has been denied or limited under certain circumstances, this often involved delays caused by the plaintiff or other equitable considerations.[14]

5.      Defendants rely on the recent post-trial decision in *LG Electronics. Inc. v. Invention Inv. Fund I, L.P.*, where the court held that plaintiff was not entitled to prejudgment interest because it "was not deprived of any money" and therefore an award of prejudgment interest "would constitute an inequitable windfall."[15]  The *LG Electronics* decision was heavily redacted, and the court's reasoning is difficult to decipher.[16]

---

[13] *In re Mindbody, Inc., S'holder Litig.*, 2023 WL 7704774, at *10 (Del. Ch. Nov. 15, 2023), *aff'd in part, rev'd in part on other grounds*, 332 A.3d 349 (Del. 2024).

[14] *Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*, 996 A.2d 1254 (Del. 2010) (holding that although plaintiff was entitled to prejudgment interest, it only applies "when a party unjustifiably refuses to live up to its obligation after payment is due"); *Roven*, 603 A2d at 826 (citing *Moskowitz*, 391 A2d at 209  (noting "the trial court has some discretion in fixing the amount of interest where there has been inordinate delay caused by one of the parties[,]" and denying prejudgment interest on sums already paid by the plaintiff for which advancement was authorized); *Summa*, 540 A.2d at 407  (granting prejudgment interest where the delay was not solely attributable to the plaintiff, as both parties contributed to the ten-year delay in litigation); *LG Elecs. Inc. v. Invention Inv. Fund I, L.P.*, 2025 WL 1545444, at *4 (Del. Super. May 15, 2025) (denying prejudgment interest where the plaintiff had not been deprived of any funds); *Lamourine v. Mazda Motor of Am., Inc.*, 2007 WL 3379328, at *4 (Del. Super. May. 29, 2007) (explaining trial courts have discretion in awarding prejudgment interest by considering the parties' actions and apportioning fault for any delays).

[15] *LG Elecs. Inc. v. Invention Inv. Fund I, L.P.*, 2025 WL 1545444, at *4 (Del. Super. May 15, 2025) (first quoting *Fleet Fin. Gp., Inc. v. Advanta Corp.*, 2003 WL 22707336, at *5 (Del. Ch. Nov. 7, 2003); and then quoting *Levey v. Browstone Asset Mgmt., LP*, 2014 WL 4290192, at *1 (Del. Ch. Aug. 29, 2014)).  Defendants further rely on the Second Circuit's decision in *Bulk Oil (U.S.A.), Inc. v. Sun Oil Trading Co.*, 697 F.2d 481 (2d Cir. 1983).  D.I. 304 at 4.  The Court declines the invitation to rely upon an out-of-circuit decision and instead relies upon the Supreme Court of Delaware's guidance in *Brandywine Smyrna* and *Moskowitz*.

[16] *Id.*

4

6. The non-redacted portions of the *LG Electronics* decision indicate the court held that prejudgment interest would constitute an impermissible windfall for the prevailing party who had not been deprived of any funds due to contractual arrangements.[17] Unlike the prevailing party in *LG Electronics*, Plaintiffs here *have* paid a substantial amount. Still, Defendants assert "there would have been no difference in Plaintiffs' account balance if [Defendants] or the loan paid for the $70 million settlement."[18] This argument is unconvincing.

7. As Plaintiffs point out, Defendants' position ignores the uncontroverted trial record as to Plaintiffs' lost use of capital and overlooks the deprivation of that use altogether.[19] The record demonstrates that Defendants' breach of the MIPA, by failing to indemnify Plaintiffs, deprived Plaintiffs of capital they would have used to invest in and grow their business.[20] While Plaintiffs received interest on the loan principal, that award is unrelated to prejudgment interest, which is "conceptually

---

[17] *Id.* at *8 (Del. Super. May 15, 2025). In so holding, the court cited a case from the Court of Chancery, *Levey v. Brownstone Asset Management, LP*, 2014 WL 4290192, at *1 (Del. Ch. Aug. 29, 2014), which cited another case from the Court of Chancery, *Gentile v. Rossette*, 2010 WL 3582453, at *1 (Del. Ch. Sept. 10, 2010). Notably, in *Levey*, the Court of Chancery only determined the *rate* of interest, not whether any part of the judgment should be excluded from the prejudgment interest calculation. *Levey*, 2014 WL 4290192, at *1 (the Court notes the captioned defendant in the letter decision (and, in turn, in Westlaw) in *Levey* is listed as *Browstone* instead of *Brownstone*, but the remaining record reflects the latter is the correct spelling).
[18] D.I. 304 at 2.
[19] D.I. 306 at 1.
[20] *Id.* at 2.

5

separate and distinct" from other types of damages, including interest expenses incurred due to borrowing.[21]

8.      For these reasons, Plaintiffs are entitled to prejudgment interest based on the principal amount of $35,832,218.92.[22]

**Contingent Closing Note**

9.      Defendants seek confirmation that their rights to amounts due under the Contingent Closing Note (including accrued interest) remain intact and unaffected by the Opinion.[23]  Defendants argue the balance remaining in the note should offset any final obligation to Plaintiffs.[24]  Conversely, Plaintiffs assert the issue is not yet ripe, disputing Defendants' attempt to raise it at this stage.[25]  Plaintiffs contend that any disputes over the note's application should be handled under the note's contractual mechanisms if they arise.[26]  Plaintiffs also commit to abide by the note and its resolution procedures.[27]  Plaintiffs neither cite nor rely on the Opinion with

---

[21] *Brandywine Smyrna, Inc. v. Millennium Builders LLC*, 34 A.3d 482 (Del. 2011)
[22] In the Opinion, the Court held that Defendants breached the MIPA by failing to indemnify Plaintiffs for $60.2 million of the total $70 million Patent Litigation settlement amount, plus $4,304.444.50 of the Patent Litigation attorneys' fees and expenses, for a total of $64,504,444.50. *See generally* Op.  Defendants' 55.55% share of this principal amount was $35,832.218.92.
[23] D.I. 300 at 2.
[24] D.I. 304 at 7.
[25] D.I. 306 at 2.
[26] *Id.* at 4.
[27] D.I. 301 at 6–7.

respect to the Contingent Closing Note, suggesting the Opinion does not presently impact the note.[28]

10.    The Court finds that the issue regarding the Contingent Closing Note is not yet ripe. If a dispute arises in the future, that dispute will be handled at the appropriate time and pursuant to the note's terms.[29]

**Indemnity Cap**

11.    The parties agree on the 9.5% interest rate (the Federal Reserve discount rate of 4.5% on the date of judgment, plus 5% under 6 *Del. C.* § 2301(a)).[30] Defendants argue the indemnity cap (set at 55% of the purchase price, or ~$55 million) remains untouched by the Opinion.[31] Defendants seek confirmation that their indemnity obligation cannot exceed the cap and maintain that nothing in the Opinion alters this limit.[32] Plaintiffs contend the indemnity cap is not at issue because the current judgment has not reached the cap.[33] Plaintiffs argue the applicability of the cap, especially concerning post-judgment interest, is hypothetical and should not be decided now.[34] The Court agrees. Because the Opinion neither

---

[28] *See generally* D.Is. 301, 306.
[29] *See, e.g.*, Contingent Closing Note § 5(g) ("[i]f the Seller commences a proceeding to enforce and collect upon this Note and prevails in such proceeding, the Buyer shall pay all reasonable costs incurred by the Seller in connection therewith, including attorneys' fees and disbursements.").
[30] D.I. 300, Pls.' Proposed Order ¶ 4; D.I. 302, Defs.' Proposed Order ¶ 3.
[31] D.I. 300 at 3; D.I. 304 at 8.
[32] D.I. 300 at 3; D.I. 304 at 8.
[33] D.I. 301 at 7; D.I. 306 at 4.
[34] D.I. 301 at 7; D.I. 306 at 4.

addresses nor limits the applicability of the indemnity cap, the Court need not explicitly declare an indemnity cap for post-judgment interest.

## Conclusion

12. For the reasons stated, the Court finds Plaintiffs are entitled to prejudgment interest as discussed herein. The issues concerning the contingent closing note and indemnity cap, as raised by Defendants, are unripe for adjudication at this time. The Court will issue an order contemporaneously with this decision, adopting Plaintiffs' proposed form of order.[35]

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

---

[35] *See generally* D.I. 300, Pls.' Proposed Order.